**BAKELITE COMPANY, a Corporation, Substitute Union Carbide Corporation, Appellant-Respondent,**

v.

**J. H. MILLER and Shirley A. Miller, Appellants-Respondents.**

No. 50098.

Supreme Court of Missouri,

Division No. 1.

Nov. 11, 1963.

Motion for Rehearing or to Modify Opinion and to Transfer to Court En Banc Denied Dec. 9, 1963.

Brown & Normile, Edina, for plaintiff-appellant.

Schmiedeskamp, Jenkins & Robertson, Quincy, Ill., Carstarphen, Harvey & Wasinger, Harry Carstarphen, Hannibal, for defendants-appellants-respondents.

COIL, Commissioner.

A division of Union Carbide Corporation, called Bakelite Company, brought an action against J. H. Miller and his wife, Shirley, in two counts, seeking to recover an alleged indebtedness evidenced by six promissory notes each in the sum of $2,000 executed by J. H. Miller Manufacturing Company, a corporation, payable to plaintiff and endorsed by defendants; and in the second count to recover $6,000 as the alleged balance due on an open account for merchandise sold and delivered by plaintiff to J. H. Miller Manufacturing Company, the payment of which had been guaranteed in writing by defendants. We shall continue to refer to the parties as they were designated in the trial court.

A jury returned a verdict on Count 1 for plaintiff and assessed its damages at $12,000 with interest from the date of said notes and on Count 2 a verdict for the defendants. Plaintiff has appealed from the judgment on Count 2 and defendants·have appealed from the judgment on Count 1.

We shall consider first the plaintiff's appeal and here state the evidence pertinent to the issues under Count 2.

It was conceded that J. H. Miller was the president of the J. H. Miller Manufacturing Company, a corporation, hereinafter sometimes called Miller Company, located in Quincy, Illinois, and that Shirley A. Miller was his wife. Prior to April 1958, the Miller Company owed plaintiff $21,000 for merchandise theretofore purchased from plaintiff. Frank Bielevicz was the manager of plaintiff's Bakelite division's eastern credit office and was handling the Miller Company account. As a result of discussions between him and Mr. Miller in Quincy in the latter part of April 1958, a series of fifteen notes dated May 2, 1958, and totaling $21,000, were executed by the

company and on May 16, 1958, endorsed by Mr. and Mrs. Miller. Also on May 16, 1958, Mr. and Mrs. Miller executed a guaranty agreement by the terms and provisions of which they agreed to guarantee the payment to plaintiff "of any and all open and other accounts" of the Miller Company, whether then due or thereafter incurred, until such time as the guarantors revoked the agreement (there was no contention that the agreement had been revoked). Plaintiff did not at the trial contend, and does not here contend, that the agreement had anything to do with the indebtedness evidenced by the notes; on the contrary, plaintiff stated at the trial that the guaranty agreement did not cover the notes but only the open account, which by the time the present action was filed was in the amount of $6,000.

Mr. Bielevicz testified by deposition taken on September 7, 1962, a week prior to trial on September 12, that he was personally familiar with the accounts of J. H. Miller Manufacturing Company and J. H. and Shirley A. Miller as individuals, as they appeared on the books of the Union Carbide Corporation and that the original books and records reflecting the transactions evidencing those accounts were kept under his supervision. He testified that such books and records showed that the Miller Company and the Millers as individuals then (September 7, 1962) owed plaintiff a total of $18,000, $12,000 evidenced by notes and $6,000 on open account; that no payments had been made on the account since the institution of this lawsuit (July 16, 1959) and no credits other than those entered were due; that the prices charged were plaintiff's standard published prices for the goods delivered; that about February 3, 1959, he had talked with Mr. Miller by telephone; that Miller agreed to pay the then $7,000 open account in full within a week; that thereafter $1,000 was paid on the account; that written demand for the balance of $6,000 was again made by letter dated March 16, 1959; that "Mr. Miller never did deny that $18,000 was due and

871

owing. He just kept asking for more time to pay." Mr. Bielevicz testified further that the merchandise sold for which $6,000 was due was sold and shipped to the Miller Company in reliance upon the guaranty agreement.

Mr. Miller, who testified both as plaintiff's witness and later in his own behalf as defendant, testified (relevant to the open account) that he did not have any conversation with Bielevicz on or immediately prior to February 10, 1959, to the effect that the open account would be paid within a week thereafter; that at that time (February 1959) he (Miller) was not in control of the business; that a Mr. Hanlon was then running the company; that he had introduced Bielevicz to Hanlon in a telephone conversation on February 4, 1959, and had told Bielevicz that Hanlon would be running the business.

Plaintiff first contends that the trial court erred in failing and refusing to direct a verdict for it because its claim that $6,000 was due on open account was established by "uncontradicted testimony and documentary evidence about which there was no real dispute and about which the defendants did not offer one scintilla of evidence."

■ It is true, as plaintiff contends, that its evidence (sufficient to have made a prima facie case on the open account claim) was not denied or contradicted in any essential respect by any evidence offered by defendants; but defendants' answer to Count 2 specifically denied the averments by plaintiff that defendants by reason of their guarantee owed plaintiff $6,000 on open account. Thus, the burden was on plaintiff to prove the essential facts necessary to establish its claim. The jury could believe or not believe plaintiff's uncontradicted or uncontroverted evidence, and if the jury did not believe plaintiff's evidence, it properly could find for defendants. J. D. Streett & Co. v. Bone, Mo., 334 S.W. 2d 5, 9 [5].

■ Plaintiff seeks to bring itself within an exception to the above-stated rule on the ground that its proof was largely "documentary" and that neither Mr. Miller nor Mrs. Miller denied that the Miller Manufacturing Company did in fact owe $6,000 on open account even though each was a witness in the case. The only "documents" to which plaintiff refers are its own books and records. The fact is that even those books and records were not offered in evidence, and even if they had been offered, those books and certain letters written by plaintiff to defendant J. H. Miller were certainly not "documentary" within the meaning of the exception to the rule.

■■ The general rule as to "conclusive documentary evidence" is stated in Baugh v. Life & Casualty Ins. Co. of Tenn., Mo., 307 S.W.2d 660, 664, as follows: " * * * it must be an instrument or record having legal efficacy to which the one sought to be bound is in some way a party, or the truth of which he vouches for, either expressly or in legal effect, or is estopped to deny." There was no such documentary evidence adduced in this case. Further, there was no admission at the trial by either Mr. or Mrs. Miller that they owed the $6,000 and their failure to deny that they owed that amount (they were not asked) did not constitute an admission.

■ Plaintiff contends further that the trial court should have granted it a new trial on the ground that the verdict on Count 2 was against the weight of the evidence and where, as here, it is contended that "there is a complete absence of probative facts to support a verdict an appellate court is authorized to interfere." Plaintiff again overlooks the fact that a verdict in defendants' favor need not be supported by any evidence. "The sufficiency of the evidence to support the verdict in defendant's favor is not an open question in this court; therefore we need not concern ourselves about what the evidence showed in that regard." Cluck v. Abe, 328 Mo. 81, 40 S.W.2d 558, 559 [1–3]. The trial court may, in the exercise of a sound judicial discretion, determine to set aside or determine not to

set aside a verdict as against the weight of the evidence, and "it is the rule that where the burden of proof is on the plaintiff who relies on oral testimony, or upon documentary testimony that is not legally conclusive, or a mixture of both, to establish all or some of the essential elements of his cause of action a verdict in the defendant's favor is not required to have evidentiary support but rests upon a finding by the jury against the party having the burden of proof, and after the trial court exercises its discretion by overruling a motion for new trial," an appellate court will not entertain the contention that the trial court thereby abused its discretion. J. D. Streett & Co. v. Bone, supra, 334 S.W.2d 10 [7].

Plaintiff contends further that the trial court erred in giving defendants' instruction 3.

Plaintiff submitted its case on Count 2 by instructions 4 and 5 requiring the jury to find (instruction 4) that defendants "executed the guaranty agreement mentioned in evidence, and * * * that the plaintiff, relying on said guaranty, thereafter sold and delivered merchandise mentioned in evidence to the J. H. Miller Mfg. Company and that J. H. Miller Mfg. Company failed to pay for said goods, and that within a reasonable time thereafter plaintiff notified defendant thereof, then your verdict should be for the plaintiff and against the defendant on Count II of the petition," and further (instruction 5) that if the jury found for plaintiff on Count 2 and found "that there was delivered to the J. H. Miller Mfg. Company merchandise for the agreed price of $7,000.00, and if you further find from the evidence that J. H. Miller Mfg. Company paid to the plaintiff the sum of $1,000.00, which was credited on said account, if you so find, leaving a balance due to plaintiff thereon of $6,000.00, if you so find, and that plaintiff made demand for its payment, then your verdict on the second count of plaintiff's petition should be for the plaintiff for $6,000.00."

Defendants' instruction 3 was: "The Court instructs the jury that plaintiff makes claim under Count II herein that plaintiff delivered to J. H. Miller Manufacturing Company on or about September 23, 1958 at the special instance and request of the J. H. Miller Manufacturing Company certain goods and merchandise. You are further instructed that unless you find from the preponderance of the evidence that the plaintiff has proven such allegations, then the plaintiff cannot recover under Count II."

The evidence heretofore reviewed demonstrates that the jury reasonably could have found the facts to be as they were hypothesized in instructions 4 and 5, and if the jury so found, plaintiff was entitled to recover $6,000. Defendants' instruction 3 required as a prerequisite to a verdict for plaintiff a finding by the jury that plaintiff "delivered to J. H. Miller Manufacturing Company on or about September 23, 1958 at the special instance and request of the J. H. Miller Manufacturing Company certain goods and merchandise." The instruction then directed that unless the jury found that plaintiff had proved those facts "the plaintiff cannot recover under Count II."

In our view the giving of instruction 3 was tantamount to directing a verdict for defendants on Count 2 because there was no evidence in the case from which the jury could have found that plaintiff delivered "certain goods and merchandise" to "J. H. Miller Manufacturing Company on or about September 23, 1958." Proof that certain goods were delivered on or about the specified date was not essential to plaintiff's recovery under instructions 4 and 5. It follows that the giving of instruction 3, particularly in view of the fact that plaintiff's evidence in support of its claim on the open account was uncontradicted, constituted reversible error. Defendants have made no point or argument in their brief with respect to plaintiff's claim that instruction 3 was erroneous.

As noted, defendants appealed from the judgment entered on the jury's verdict on

Count 1 awarding plaintiff $12,000 principal and interest from May 2, 1958, on the promissory notes heretofore mentioned. Plaintiff sought to recover on notes numbered 10 through 15 which had been executed by J. H. Miller Manufacturing Company, by J. H. Miller, and on the back of which J. H. Miller and Shirley A. Miller had signed their names. Plaintiff's verdict-directing instruction 2 directed that if the jury found that J. H. Miller and Shirley A. Miller endorsed the six notes "after delivery of said notes to the plaintiff then you are instructed that the defendants are guarantors of said notes" and that presentment to the Miller Company for payment, refusal of payment by the Miller Company, and timely notice of such refusal to the defendants were not necessary.

Defendants contend that under the substantive law of Illinois (which the parties agree is applicable) the trial court erred in giving instruction 2 because defendants were endorsers and not guarantors and, as endorsers, were entitled to presentment to the maker and notice of dishonor to them in accordance with the provision of the then applicable Illinois law. (The parties agree that at the time of the transactions here in question, the Negotiable Instruments Law, adopted by Illinois in 1907, was applicable although that law was repealed when Illinois adopted the Uniform Commercial Code in July 1962.) We here state the evidence pertinent to the question whether a jury reasonably could have found that defendants were guarantors and thereby not entitled to notice of presentment and dishonor.

Mr. Bielevicz testified, as heretofore noted, that he went to Quincy on April 29, 1958, to discuss the status of Miller Company's $21,000 past due account. As a result, Mr. Miller agreed to sign notes for $21,000 as president of the company and agreed that he and his wife would endorse those notes personally and that they would sign a personal guaranty of present or future indebtedness which, as we have heretofore noted, plaintiff contends was to and did cover only amounts which might become due by reason of future sales on open account. Mr. Bielevicz said that he prepared the notes and the guaranty agreement in New York and mailed them to the Miller Company or to Mr. Miller in Quincy, Illinois, and that the fifteen notes totaling $21,000 were endorsed personally by Mr. and Mrs. Miller.

Defendant John H. Miller testified that the notes were dated May 2, 1958 (and the presumption is that they were signed on that date, § 31, N.I.L.[1]); that he and his wife each signed their names on the back of each note on May 16, 1958, and that the notes had been sent to Union Carbide Corporation prior to May 16, 1958.

Defendant Shirley A. Miller testified that she signed her name on the back of each note on May 16, 1958.

Plaintiff contends that the Negotiable Instruments Law did not expressly cover a situation in which one other than a maker of a promissory note signed his name on the back thereof in blank *after* delivery of the note to the payee; that the N.I.L. covered only the situation in which a party endorsed in blank *before* delivery and that the majority rule both before and since the N.I.L. is that one who endorsed *after* delivery was liable as a guarantor and not as an endorser.

The evidence for the jury's consideration on this aspect of the case, restated, was that there was an agreement between Mr. Miller and plaintiff in April 1958 that the Miller Company would execute notes totaling $21,000 payable to plaintiff; that he and his wife would endorse those notes; that they would also sign a guaranty agree-

---

[1] All section references to N.I.L. are to sections of the Negotiable Instruments Law as they appear in Chapter 98, Smith-Hurd Illinois Annotated Statutes, Permanent Edition.

ment guaranteeing the payment of indebtedness which might accrue by reason of future sales on open account by plaintiff to Miller Company; that plaintiff prepared the notes and the guaranty agreement in New York and mailed them to the Miller Company in Quincy; that the notes were executed by Miller Company on May 2; that some time after May 2 and prior to May 16 the notes were sent to plaintiff; and that the notes were endorsed in blank by Mr. and Mrs. Miller on May 16. While there is no direct evidence, it is a reasonable inference, and we do not understand plaintiff to contend to the contrary, that Mr. and Mrs. Miller's endorsements were written in Quincy and, consequently, it follows that the notes were returned by the payee to the maker prior to May 16.

Plaintiff argues that inasmuch as the N. I.L., Section 213, defined "delivery" as meaning "transfer of possession, actual or constructive, from one person to another," and that inasmuch as N.I.L., Section 36, provided in part that the delivery to be effective between the immediate parties "must be made either by or under the authority of the party making, drawing, accepting or indorsing, as the case may be," the only way the Miller Company could have prevented its act of sending the notes to the plaintiff the first time from being an effective delivery would have been by reason of the Miller Company having imposed conditions which would have made the delivery a conditional one; that no conditions were shown and consequently an effective delivery had been made prior to the endorsements on May 16.

■ We do not agree. It is true that by reason of the provisions of the sections above noted, a delivery of the notes by Miller Company to plaintiff without any conditions imposed by Miller Company was an unconditional delivery; but the question is whether there was an "effective delivery" which involves not only whether there was an unconditional physical transfer of the notes by defendants but also includes whether there was an acceptance of the notes by plaintiff. It is well established that to "complete a delivery, and to make it effective, the * * * note must be accepted by the payee or by some one acting for him." 10 C.J.S. Bills and Notes § 80, p. 519.

■ It is our view, therefore, and we so hold, that the facts, standing alone, that the notes in question had been executed by the maker, sent to plaintiff, returned to the maker, and thereafter endorsed by Mr. and Mrs. Miller, do not tend to prove that the Millers endorsed the notes *after* delivery. On the contrary, those facts support the opposite conclusion, viz., that the notes were not accepted by plaintiff when received by it the first time, but were returned for the Millers' personal endorsements in accordance with their prior agreement, and thus that there was no acceptance of the notes until the personal endorsements of the Millers had been placed thereon and, consequently, the Millers' endorsements were made *before* effective delivery.

The cases relied upon by plaintiff do not deal with whether there was an acceptance by the payee and thus an effective delivery, but only with the questions whether and where delivery was made; acceptance by the payee was conceded or assumed.

Under the circumstances, it is unnecessary for us to determine whether, under the substantive law of Illinois, one who was not otherwise a party and who endorsed a promissory note *after* delivery was (under the N.I.L.) liable as a guarantor or as an endorser.

Plaintiff contends further that the trial court did not err in giving instruction 2 in any event because, even if the defendants were not guarantors, they were "accommodation endorsers" and consequently, says plaintiff, presentment and notice of dishonor were not required. While plaintiff's contention in that respect is not developed in the argument portion of its brief, we understand plaintiff to mean that Section 136, N.I.L., supports the assertion that defend-

ants were accommodation endorsers. That section provides in pertinent part:

"Notice of dishonor is not required to be given to an indorser in either of the following cases: * * *

"3. Where the instrument was made or accepted for his accommodation."

■ We think it is clear that the notes in this case were not made or accepted for the accommodation of the endorsers, present defendants, and thus that Section 136 did not dispense with the necessity for notice of dishonor to them. Tucker v. Mueller, 287 Ill. 551, 554–556, 122 N.E. 847. The only case cited by plaintiff in support of its contention is National Builders Bank of Chicago v. Simons, 307 Ill.App. 562, 31 N.E.2d 274. That case decided whether an endorser under the facts there shown waived notice of presentment and dishonor and whether paragraph 2 of section 136, N.I.L., which provided that notice of dishonor is not required to be given an endorser where he is the person to whom the instrument was presented for payment, was applicable. (There is no contention here that Mr. Miller, one of the endorsers, was, under the evidence, the person to whom the note was presented for payment and consequently we do not reach that question.)

Defendants do not contend that the trial court should have directed a verdict for them on Count 1, and, in view of the fact that we may not know what the evidence will be on another trial on the questions of presentment and notice of dishonor or on the question of waiver as to either or both endorsers, we remand the case for a new trial on Count 1.

Defendants contend further that the trial court erred in striking paragraph 5 of their answer which, as amended orally at the trial, averred that plaintiff was barred from recovering on the notes in question because it had sought to recover as a preferred creditor in the bankruptcy proceedings of the J. H. Miller Manufacturing Company; that the guaranty agreement of May 16,

1958, the chattel mortgage and a subordination agreement were all executed as part of one transaction which resulted from a conference among Bielevicz, Miller, and Messrs. Burkett and McMurray (mortgagees in the chattel mortgage); that defendants endorsed the notes in question pursuant to an agreement by plaintiff that the chattel mortgage would be accepted as and considered as the primary security for any debts of Miller Company to plaintiff; that plaintiff alleged in a pleading filed in the bankruptcy proceedings that by virtue of the subordination agreement it was a secured creditor of the Miller Company as though it were the mortgagee in the aforesaid chattel mortgage and that the trustee disclaimed the property upon which the mortgage had been given; that plaintiff did not hold a public auction as provided for by the terms of the mortgage and that some of the mortgaged property was lost or stolen; that at the time the property covered by the chattel mortgage was returned to plaintiff and other parties claiming it in the bankruptcy proceedings, said property was worth in excess of the amount of all Miller Company's indebtedness to plaintiff; that plaintiff agreed with Burkett and McMurray on February 3, 1961, on a method under which the proceeds of the sale of the property covered by the chattel mortgage were to be distributed.

■ We have difficulty in understanding defendants' exact contention but, as best we interpret their argument, it is that the trial court erroneously struck paragraph 5 and thereby prevented them from offering evidence which would have constituted a bar to plaintiff's recovery on the notes. Defendants made an offer of proof which, if it contained a proffer of admissible evidence, also contained a proffer of inadmissible evidence and, of course, the trial court did not err in excluding the entire offer because, under Missouri procedure, when an offer of proof includes both admissible and inadmissible evidence, the court is not required to sort out that which is admissible but may properly reject the

whole offer. Eller v. Crowell, Mo., 238 S. W.2d 310, 313[1–3].

It appears, however, that because there may be a retrial, it may be of some assistance if we indicate our views generally with respect to the admissibility of certain of the proffered evidence without attempting to sift through the entire offer of proof; and what is said as to admissibility of evidence will at the same time indicate our opinion that proof of the matters alleged in paragraph 5 would not constitute a bar to plaintiff's recovery on Count 1 and, thus, that the trial court did not err in striking that paragraph.

We are of the opinion that evidence which tends to show that plaintiff received money from Miller Company assets subsequent to the accrual of its claimed indebtedness, would be admissible to reduce the amount plaintiff could recover. And such is true whether that money was received as a result of the sale of assets released by a trustee in bankruptcy or otherwise; nevertheless, under the terms of the written guaranty agreement in evidence, defendants specifically agreed that in the event of the Miller Company's bankruptcy, they would pay to plaintiff the amount due for all merchandise which plaintiff had sold to Miller Company. Consequently, evidence pertaining to the pleadings or positions or claims of the parties in the bankruptcy proceedings is irrelevant; the relevant matter is whether plaintiff received money, irrespective of its source, which should have been credited against the Miller Company's claimed indebtedness to plaintiff and, if so, the amount thereof.

We are of the further opinion that evidence would be admissible to show that plaintiff would have received additional money which should have been credited against the total claimed indebtedness of Miller Company, which plaintiff did not receive as a direct result of its negligence; provided that the amount of such credit, if any, is established with reasonable certainty.

And, of course, evidence of oral agreements, conversations, or understandings not incorporated in the unambiguous written documents referred to in the evidence which would tend to vary the terms and provisions of any such document is not admissible.

The judgment on Count 1 is reversed; the judgment on Count 2 is reversed; and the case is remanded.

HOUSER and WELBORN, CC., concur.

PER CURIAM.

The foregoing opinion by COIL C., is adopted as the opinion of the court.

All concur.