Adam Ford WHITE, Respondent,

v.

DIRECTOR OF REVENUE, Appellant.

No. SC 90400.

Supreme Court of Missouri,
En Banc.

Aug. 3, 2010.

Motion to Modify Opinion Denied
Sept. 21, 2010.

Matthew L. Dameron, Atty. General's Office, Jefferson City, for appellant.

James E. Switzer, James E, Switzer LLC, Clinton, for respondent.

PATRICIA BRECKENRIDGE, Judge.

Adam Ford White was arrested for driving while intoxicated in violation of section

577.010, RSMo 2000. Thereafter, the director of revenue suspended his license, under section 302.505,[1] for being arrested on probable cause to believe he was driving with a blood alcohol content of .08 percent or greater. Mr. White filed a petition with the trial court to review the suspension of his license. After a trial de novo, the trial court reinstated his driving privilege. The director appeals. The director claims the trial court's judgment is against the weight of the evidence and misapplies the law regarding probable cause. In section 302.535, the statute authorizing the trial de novo, the legislature placed the burden of proof on the director and provided that Missouri rules of civil procedure apply, which include the rule that the evidence is viewed in the light most favorable to the trial court's judgment. Additionally, as in any court-tried civil case, the trial court can disbelieve all, some, or none of the director's evidence on the contested issue of probable cause. Applying this law, the trial court's judgment was not against the weight of the evidence and the trial court did not misapply the law. The trial court's judgment is affirmed.

**Factual and Procedural Background**

On September 20, 2007, a Missouri Highway Patrol sergeant stopped Mr. White after observing that he failed to signal when turning. During the stop, the sergeant administered a series of field sobriety tests and then arrested Mr. White for driving while intoxicated. Following Mr. White's arrest, the sergeant transported him to the Henry County jail and administered a breath test, which showed that his blood alcohol content was above the legal limit.[2] Thereafter, the director administratively suspended Mr. White's driver's license under section 302.505. Mr. White filed a petition for judicial review of the administrative suspension in the Henry County circuit court, citing section 302.311, RSMo 2000. Although Mr. White stated in his petition that he was seeking judicial review under section 302.311, RSMo 2000, the trial court held a trial de novo, as authorized by section 302.535.[3]

At the trial de novo, Mr. White stipulated that the only contested issue was whether the officer had probable cause to arrest him for driving with excessive blood alcohol content. Specifically, Mr. White

1. All statutory citations are to RSMo Supp. 2009 unless otherwise indicated.

2. A person exceeds the legal limit for blood alcohol content when the "alcohol concentration in the person's blood, breath, or urine [is] eight-hundredths of one percent or more by weight[.]" Section 302.505.1. "A person commits the crime of 'driving with excessive blood alcohol content' if such person operates a motor vehicle in this state with eight-hundredths of one percent or more by weight of alcohol in such person's blood." Section 577.012.1.

3. A driver is authorized to seek review by a circuit court of his or her license revocation or suspension under three statutory provisions. Those statutes are section 302.311, RSMo 2000, authorizing appeals for suspensions or revocations due to excessive points following driving-related offenses and providing general authority for appealing license

suspensions and revocations; section 302.535, authorizing appeals for a suspension or revocation relating to driving with an excessive blood alcohol content; and section 577.041, authorizing appeals for revocations of non-commercial driver's licenses for refusal to submit to chemical testing. Because Mr. White's license was suspended for driving with an excessive blood alcohol content, he should have petitioned for a trial de novo under section 302.535 instead of section 302.311. *See Kinsman v. Dir. of Revenue*, 58 S.W.3d 27, 31 n. 2 (Mo.App.2001), *overruled on other grounds by Hinnah v. Dir. of Revenue*, 77 S.W.3d 616 (Mo. banc 2002). Mr. White is not hindered by his citation of the wrong statute, however, because it is the substance of his pleading that controls, not its form. *See Robinson v. Dir. of Revenue*, 32 S.W.3d 148, 152–53 (Mo.App.2000).

stipulated to the foundation for and admissibility of the blood alcohol test taken at the Henry County jail. The director then called as a witness the sergeant who arrested Mr. White. The sergeant testified that he noticed Mr. White's vehicle when it passed his patrol vehicle. The officer followed Mr. White's vehicle until he observed him turn into a parking lot without using his turn signal. The sergeant pulled into the lot and activated his emergency equipment. After stopping the vehicle, the officer discovered that Mr. White's turn signal was not working. However, while the vehicle was stopped, the sergeant noticed a strong odor of alcohol coming from Mr. White and empty beer cans on the floor of his vehicle. He questioned Mr. White about consuming alcohol, and, although Mr. White initially denied drinking, he did admit that he had consumed alcohol earlier in the day.

The sergeant testified that he then administered field sobriety tests to Mr. White. Mr. White tested positive for alcohol on the portable breathalyzer test. The sergeant stated that Mr. White also exhibited five of six clues indicating intoxication during the horizontal gaze nystagmus test and swayed when he took the test. Additionally, he failed the walk-and-turn test because he pivoted on his left foot rather than taking tiny steps. The sergeant again testified that he observed that Mr. White swayed and added that his eyes were bloodshot. He testified that, based on his experience, training, and observations of Mr. White's performance of the field sobriety tests, he believed Mr. White was intoxicated, so he arrested Mr. White.

On cross-examination, the sergeant testified that there was nothing abnormal about Mr. White's driving other than the fact that Mr. White passed him while the sergeant was driving the speed limit and that he failed to signal a turn. Specifically, the sergeant did not observe Mr. White weaving in the traffic lanes or other erratic driving. When Mr. White exited his vehicle, he did not stumble or touch his vehicle for stability. Although there were empty beer cans on the floor of Mr. White's vehicle, the sergeant did not detect any odor of alcohol in the vehicle. The sergeant described the odor of alcohol emanating from Mr. White as strong, when he was sitting in the patrol car. When questioned further, the sergeant acknowledged that he had marked in his written alcohol influence report that there was only a moderate odor of alcohol emanating from Mr. White when he was in the patrol car.

The sergeant then was cross-examined about his methodology in performing the horizontal gaze nystagmus test. When asked whether Mr. White was facing the roadway when the test was administered, the sergeant testified that he did not remember. He reluctantly acknowledged that the National Highway Traffic Safety Administration suggests that a person not face the roadway while being tested so the person's eyes would not be stimulated by traffic, but he stated he did not believe it was a requirement. He also testified that the only swaying he observed was Mr. White moving in a one-inch circle—moving half an inch from the center in each direction—during the horizontal gaze nystagmus test. When questioned about his instructions for the one-leg-stand test, a detail of his instructions to Mr. White differed from his direct testimony.

At the end of the sergeant's testimony, his alcohol influence report about Mr. White was admitted into evidence. While in his direct testimony, he testified that his attention was drawn to Mr. White because he was speeding, in the narrative of the alcohol influence report, the sergeant stated that Mr. White's vehicle "slowly passed" his vehicle. The director rested, and Mr. White did not present any evi-

dence. In its judgment, which did not include findings of fact or conclusions of law, the trial court found in favor of Mr. White and ordered his license reinstated. The director appeals.

On appeal, the director argues the trial court's judgment was against the weight of the evidence and misapplied the law regarding probable cause. The director asserts that, based on the facts and circumstances in this case, a prudent, cautious, and trained officer would have probable cause to believe that Mr. White was driving while intoxicated. This Court granted transfer after memorandum opinion by the court of appeals. Mo. Const. art. V, sec. 10.

### Section 302.535 Places Burden of Proof on State and Requires Application of Rules of Civil Procedure

The director claims that there was substantial and uncontroverted evidence that supported the arresting officer's probable cause determination and, therefore, that trial court's judgment is against the weight of the evidence. The director argues that because the trial court made no findings of fact on the officer's credibility and the director's evidence was not controverted, this Court need not defer to the trial court's factual determinations. In support of this argument, the director cites prior decisions of this Court and the court of appeals regarding the parties' burden of producing evidence and the discretion given to the trial court's determination of the credibility of the director's evidence in section 302.535 cases.

Section 302.535 governs judicial review of an administrative suspension or revocation of a person's license, pursuant to section 302.505,[4] when the person is arrested on probable cause to believe that the person was driving with a blood alcohol content of .08 percent or more. Section 302.535.1 permits a person aggrieved by the director's decision to request a trial de novo in the circuit court. In such trials de novo, the legislature expressly placed the burden of proof on the state and expressly provided that the trial be conducted according to Missouri rules of civil procedure. Section 302.535.1 reads:

> Any person aggrieved by a decision of the department may file a petition for trial de novo by the circuit court. *The burden of proof shall be on the state to adduce the evidence. Such trial shall be conducted pursuant to the Missouri rules of civil procedure* and not as an appeal of an administrative decision pursuant to chapter 536, RSMo. The petition shall be filed in the circuit court of the county where the arrest occurred. The case shall be decided by the judge sitting without a jury.

(emphasis added). The director's burden of proof[5] has two components—the burden of production and the burden of persuasion. *Kinzenbaw v. Dir. of Revenue*, 62 S.W.3d 49, 53 (Mo. banc 2001). The burden of production is "a party's duty to introduce enough evidence on an issue to have the issue decided by the fact-finder, rather than decided against the party in a peremptory ruling such as summary judg-

---

4. Section 302.505.1 states that the director of revenue "shall suspend or revoke the license of any person upon [a] determination that the person was arrested on probable cause to believe such person was driving a motor vehicle while the alcohol concentration in the person's blood, breath, or urine was [.08%] or more by weight[.]"

5. The statute says "state;" however, the director of revenue has the responsibility of defending lawsuits at the trial level for driver's license suspensions and revocations under section 302.535. 12 CSR 10–24.020(5) ("The director of revenue shall be represented at trials de novo under section 302.535.1, RSMo by attorneys from the Department of Revenue, Office of the General Counsel.")

ment or a directed verdict." BLACK'S LAW DICTIONARY 223 (9th ed.2009). The burden of persuasion is defined as "[a] party's duty to convince the fact-finder to view the facts in a way that favors that party." *Id.* By also placing the burden of "adduc[ing]" evidence on the director, in addition to its assignment of the burden of proof to the director, the legislature emphasized its intention that it is the director who must bear the burden of producing evidence. *See* section 302.535.1.

 When the burden of proof is placed on a party for a claim that is denied, the trier of fact has the right to believe or disbelieve that party's uncontradicted or uncontroverted evidence. *Bakelite Co. v. Miller,* 372 S.W.2d 867, 871 (Mo.1963). If the trier of fact does not believe the evidence of the party bearing the burden, it properly can find for the other party. *Id.* "Generally, the party not having the burden of proof on an issue need not offer any evidence concerning it." *Stiff v. Stiff,* 989 S.W.2d 623, 628 (Mo.App. 1999) (internal citations omitted).

Regarding the trial court's findings about the evidence, certain statutes and rules require a trial court to make written findings of fact in its judgment. *E.g.*, section 452.375.6 (mandating written findings of fact when a trial court makes a child custody determination); section 211.447.7 (requiring written findings when parental rights are terminated); and Rule 29.15(j) (directing that the motion court "shall" enter written findings on the Rule 29.15 motion as to whether a postconviction relief hearing is held). In the absence of a statute or rule requiring written findings

of fact, Rule 73.01(c) governs and provides that a trial court is required to make written findings of fact only when requested to do so by a party. Similarly, section 510.310 provides that a party may request written findings, but written findings are not required for appellate review of court-tried cases. Section 510.310.2, .4, RSMo 2000. Rule 73.01(c) also provides that when there are no written findings, the evidence "shall be considered as having been found in accordance with the result reached;" in other words, in the light most favorable to the judgment.

 In prior cases cited by the director, this Court and the court of appeals ruled contrary to the assignment by the legislature of the burden of proof and the burden of producing evidence in section 302.535 as well as its direction that the rules of civil procedure govern trials de novo. The divergence from the legislative mandate in section 302.535 began with decisions of this Court in the mid–1990s in two section 577.041 cases in which a driver's license was suspended or revoked for refusal to submit to a chemical test.[6]

In *Berry v. Dir. of Revenue* and *Reinert v. Dir. of Revenue,* this Court reversed the trial court's reinstatement of the driver's license because it found that the trial record did not support a finding that the officer lacked reasonable grounds to arrest the driver. *Berry v. Dir. of Revenue,* 885 S.W.2d 326, 328 (Mo. banc 1994); *Reinert v. Dir. of Revenue,* 894 S.W.2d 162, 164 (Mo. banc 1995). In so holding, the Court noted, in *Berry,* that there was no conflict in the evidence and, in *Reinert,* that the driver did not introduce any evidence.

---

6. Although section 577.041 states that the arresting officer must have "reasonable grounds" to believe the person was driving while intoxicated, " '[r]easonable grounds' is virtually synonymous with probable cause." *Guhr v. Dir. of Revenue,* 228 S.W.3d 581, 584 (Mo. banc 2007) (quoting *Hinnah v. Dir. of Revenue,* 77 S.W.3d 616, 620 (Mo. banc

2002)). As a result, this Court has cited to section 577.041 cases interchangeably with section 302.535 cases when discussing the issues related to probable cause, the standard of review, and the deference given to implicit and explicit factual findings. *See Brown v. Dir. Of Revenue,* 85 S.W.3d 1, 4 n. 4 (Mo. banc 2002).

*Berry,* 885 S.W.2d at 328; *Reinert,* 894 S.W.2d at 164. In *Reinert,* this Court reversed despite the driver's express argument that Rule 73.01(c) required that all fact issues be considered and found in accordance with the result reached, which supported the trial court's judgment because the trial court could have disbelieved the officer's testimony. *Reinert,* 894 S.W.2d at 164.

After *Reinert,* the court of appeals acted on the implicit statement made by these cases that appellate courts should give less deference to the trial court's assessment of the evidence and the trial court's credibility determinations in section 302.535 trials de novo. The court of appeals understood *Reinert* to mean that "when the evidence supporting revocation is uncontroverted and the trial court has not specifically found the director's witness incredible, appellate courts will not presume that the trial judge found a lack of credibility and will not affirm on that basis." *Mathews v. Dir. of Revenue,* 8 S.W.3d 237, 238 (Mo. App.1999); *see also Sitzes v. Dir. of Revenue,* 928 S.W.2d 3, 6 (Mo.App.1996) (citing *Reinert* in reversing the trial court's reinstatement of driving privileges). The term "uncontroverted evidence" was used in these cases to describe the circumstance in which the driver did not present evidence that contradicted the director's evidence or was contrary to the director's evidence. As a result of these cases, for an appellate court to affirm the reinstatement of driving privileges, a written finding by the trial court was required if it found a witness lacked credibility when the evidence was "uncontroverted." Thereafter, this Court adopted the court of appeal's interpretation of *Reinert,* as stated in *Mathews.*

*Brown v. Dir. of Revenue,* 85 S.W.3d 1, 7 (Mo. banc 2002).

The holding of this Court in *Verdoorn v. Director of Revenue* further strayed from the fundamental law regarding the burden of proof, the burden of producing evidence and the legislature's assignment of these burdens in section 302.535. 119 S.W.3d 543 (Mo. banc 2003). After recognizing that the director had the burden of proof and articulating the evidence necessary to prove the director's case, the Court went on to give the director's uncontroverted evidence a presumption of validity and to require the driver to present evidence to rebut that presumption of validity. *Id.* at 546. Although the Court found that the "director retains the burden of proof throughout the proceeding," it nevertheless assigned to the driver the burden of producing evidence. *Id.* Specifically, the Court stated, the driver's "rebuttal evidence should challenge the presumption of validity established by the director's *prima facie* case." *Id.* No provision in section 302.535 creates a presumption that the director's evidence establishing a prima facie case is true or shifts the burden to the driver to produce evidence to rebut such presumption. Rather, *Verdoorn*'s holding is contrary to the plain language of section 302.535.1, which states that "[t]he burden of proof shall be on the state to adduce the evidence." *Verdoorn* was followed in *Coyle v. Director of Revenue* and *York v. Director of Revenue.* 181 S.W.3d 62, 65 (Mo. banc 2005); 186 S.W.3d 267, 269–70 (Mo. banc 2006).

In 2007, in *Guhr v. Director of Revenue,* this Court clarified the difference between uncontradicted evidence and uncontested evidence.[7] 228 S.W.3d 581 (Mo. banc

---

7. The meaning the courts imposed on "controvert" in section 302.535 and section 577.041 cases requires the driver to produce evidence for the trial court to disbelieve the director's evidence. *See Guhr,* 228 S.W.3d at 585 n. 3. This concept is at odds with well-

accepted principles of law and the express direction of section 302.535 that the burdens of proof and production are on the director. Accordingly, the concept of "uncontroverted evidence" to require the production of con-

2007). This Court held that "the trier of fact has the right to disbelieve evidence, even when it is not contradicted." *Id.* at 585 n. 3 (internal citations omitted). When the facts of the case are contested, this Court defers to the trial court's assessment of the evidence. *Id.* It is only when the evidence is *uncontested* that no deference is due to the trial court's findings. *Id.* Then, the issue is legal and there is no finding of fact to which to defer. *Id.*

Despite distinguishing between a fact finder's treatment of uncontradicted and uncontested evidence, this Court stated that "[a]lthough 'the trier of facts has the right to disbelieve evidence, even when it is not contradicted,' there is nothing in this record to indicate that the trial court disbelieved any of the evidence." *Id.* (internal citations omitted). This Court held, apparently because the record contained no findings about credibility, that the trial court's judgment that the officer lacked probable cause to believe that Mr. Guhr was driving while intoxicated was against the weight of the evidence. *Id.* at 586. While the Court correctly articulated the distinction between uncontradicted and uncontested evidence, it followed the rule adopted in *Brown* that Rule 73.01(c) is inapplicable to license revocation cases and that written findings that witnesses are not credible are necessary even though there is no statute or rule that requires written findings absent a request by a party.

These cases fail to follow the legislative mandate of section 302.535.1 to place the burden of proof, including the burden of production of evidence, on the director and to apply the rules of civil procedure. Additionally, the director's evidence is given a presumption of validity that is not supported by general principles of law applicable to court-tried civil cases or by the language of sections 302.505 and 302.535. The cases confuse the law and contribute to inconsistent decisions at the trial and appellate level.[8] To the extent that these cases or any other prior case applied section 302.535 to create a presumption of validity of the director's evidence, to place a burden on the driver to produce evidence that controverts or contradicts the director's evidence for the trial court to disbelieve the evidence on a contested issue, or to require written factual findings absent a request by a party, the cases are overruled.[9] Accordingly, the specific provisions of section 302.535 should govern any trial de novo under section 302.505 and any appeal therefrom. Moreover, trial court judgments in driver's license suspension and revocation cases under section 302.535 are reviewed as any court-tried civil case. *See Guhr,* 228 S.W.3d at 584.

In appeals from a court-tried civil case, the trial court's judgment will be affirmed unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares

---

trary evidence to contest an issue or evidence is improper, and the concept of "contested evidence" is the appropriate concept as it correctly denotes disputing or litigating a claim without requiring an affirmative offer of evidence contradicting the director's evidence.

8. For an in depth explanation of this confusion of the law and resulting inconsistent decisions, see generally Alison K. Spinden, Note, *Slurred Speech and Double Vision: Mis-*

*souri's Supreme Court is Unsteady on DWI Standard,* 72 Mo L.REV. 1411 (2007).

9. This Court's ruling—that the requirement for the trial court to make written findings whenever it found the director's evidence not to be credible is contrary to Rule 73.01(c)— does not preclude the director from obtaining such findings. Under Rule 73.01(c) and section 510.310, the director can request factual findings about the credibility of her witnesses in every case, if desired.

or applies the law. *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo. banc 1976). To set aside a judgment as "against the weight of the evidence," this Court must have a firm belief that the judgment is wrong. *Id.*

■ In reviewing a particular issue that is contested, the nature of the appellate court's review is directed by whether the matter contested is a question of fact or law. *See City of St. Joseph v. Vill. of Country Club,* 163 S.W.3d 905, 907 (Mo. banc 2005) (questions of law are reviewed de novo); *Bd. of Educ. of City of St. Louis v. Mo. State Bd. of Educ.,* 271 S.W.3d 1, 7 (Mo. banc 2008) (when reviewing questions of fact, deference is given to the factfinder). When the facts relevant to an issue are contested, the reviewing court defers to the trial court's assessment of the evidence. *York,* 186 S.W.3d at 272.

■ It is only when the evidence is *uncontested* that no deference is given to the trial court's findings. *Guhr,* 228 S.W.3d at 585 n. 3. Evidence is uncontested in a court-tried civil case when the issue before the trial court involves only stipulated facts and does not involve resolution by the trial court of contested testimony; in that circumstance, the only question before the appellate court is whether the trial court drew the proper legal conclusions from the facts stipulated.[10] *Schroeder v. Horack,* 592 S.W.2d 742, 744 (Mo. banc 1979). Evidence also is uncontested when a party "has admitted in its pleadings, by counsel, or through the [party's] individual testimony the basic facts of [other party's] case." *All Am. Painting, LLC v. Fin. Solutions & Assocs. Inc.,* 315 S.W.3d 719, 723 (Mo. banc 2010). In such cases, the issue is legal, and there is no finding of fact to which to defer. *Guhr,*

228 S.W.3d at 585 n. 3; *All Am. Painting,* 315 S.W.3d 719, 722–23.

One way a party contests an issue is by contesting the evidence. To contest evidence, a party need not present contradictory or contrary evidence. While a party can contest evidence by putting forth evidence to the contrary, *Howdeshell v. Dir. of Revenue,* 184 S.W.3d 193, 199 (Mo.App. 2006), a party also can contest evidence by cross-examination, *see Sandy Ford Ranch, Inc. v. Dill,* 449 S.W.2d 1, 6 (Mo.1970), or by pointing out internal inconsistencies in the evidence. *Id.* For example, "[a] legitimate factual dispute or credibility determination is presented by . . . cross-examination of a witness for the Director which raises a legitimate credibility dilemma with respect to a material aspect of the Director's case." *Furne v. Dir. of Revenue,* 238 S.W.3d 177, 181 (Mo.App.2007) (internal citations omitted). A party also may contest evidence by arguing to the trial court that the witness is not credible as apparent from the witness's demeanor, *Beckemeier v. Baessler,* 270 S.W.2d 782, 787 (Mo.1954), or because of the witness's bias or the witness's incentive to lie. *State v. Johnson,* 700 S.W.2d 815, 817 (Mo. banc 1985).

■ When evidence is contested by disputing a fact in any manner, this Court defers to the trial court's determination of credibility. *Hinnah v. Dir. of Revenue,* 77 S.W.3d 616, 620 (Mo. banc 2002); Rule 84.13(d)(3). A trial court is free to disbelieve any, all, or none of that evidence. *York,* 186 S.W.3d at 272. Appellate courts defer to the trial court on factual issues "because it is in a better position not only to judge the credibility of witnesses and the persons directly, but also their sincerity and character and other trial intangibles

---

**10.** Mr. White's case was not based on only stipulated facts; therefore, this standard does not apply here.

which may not be completely revealed by the record." *Essex Contracting, Inc. v. Jefferson Cnty.*, 277 S.W.3d 647, 652 (Mo. banc 2009) (internal citations omitted). The appellate court's role is not to re-evaluate testimony through its own perspective. *Id.* at 653. Rather, the appellate court confines itself to determining whether substantial evidence exists to support the trial court's judgment, *id.*; whether the judgment is against the weight of the evidence—"weight" denoting probative value and not the quantity of evidence, *O'Shea v. Pattison–McGrath Dental Supplies*, 352 Mo. 855, 180 S.W.2d 19, 23 (1944); or whether the trial court erroneously declared or misapplied the law. *Murphy*, 536 S.W.2d at 32.

### Judgment Is Not Against the Weight of the Evidence

In this case, Mr. White contested in the trial de novo whether the officer had probable cause to arrest him for an alcohol-related offense, one of the required elements of proof in a review of a license suspension or revocation under section 302.505.1.[11] *Verdoorn*, 119 S.W.3d at 545. In entering judgment in his favor, the trial court found that the director failed to prove the officer had probable cause. The director's appeal from the trial court's decision challenges both the factual and legal determinations of the trial court regarding probable cause. The first claim of error by the director is that the trial court's judgment was against the weight of the evidence because there was substantial and uncontroverted evidence of probable cause.[12] Therefore, this Court will focus its inquiry on whether the director proved that the sergeant had probable cause to arrest Mr. White for violating an alcohol-related offense.

▇▇▇▇ The proper analysis to determine whether an officer had probable cause is set out in *Brown:*

The probable cause required for the suspension or revocation of a driver's license is the level of probable cause necessary to arrest a driver for an alcohol-related violation. That level of probable cause will exist "when a police officer observes unusual or illegal operation of a motor vehicle and observes indicia of intoxication on coming into contact with the motorist." Probable cause, for purposes of section 302.505, will exist "when the surrounding facts and circumstances demonstrate to the senses of a reasonably prudent person that a particular offense has been or is being committed." The level of proof necessary to show probable cause under section 302.505 "is substantially less than that required to establish guilt beyond a reasonable doubt." "There is a 'vast gulf' between the quantum of information necessary to establish probable cause and the quantum of evidence required to prove guilt beyond a reasonable doubt." The trial court must assess the facts "by viewing the situation as it would have appeared to a prudent, cautious, and trained police officer."

85 S.W.3d at 4 (citations omitted). In conducting that analysis, the surrounding facts and circumstances must take into account the trial court's right to disbelieve

---

11. During review of a license suspension or revocation under section 302.505.1, the trial court is to determine whether the suspension is supported by evidence that: (1) the driver was arrested on probable cause for violating an alcohol-related offense; and (2) the driver's blood alcohol concentration exceeded the legal limit of .08 percent. *Verdoorn*, 119 S.W.3d at 545. The director must establish the grounds for suspension by a preponderance of the evidence. *Id.*

12. The director's claim that her "uncontroverted" evidence proved probable cause is based on prior case law that this Court is overruling and will not be addressed further.

the director's evidence. *Id.* United States Supreme Court precedent gives guidance about the deference that should be given to credibility decisions of the trial court when reviewing whether probable cause existed under the constitutions of the United States and Missouri. *State v. Damask*, 936 S.W.2d 565, 570 (Mo. banc 1996) (Missouri's search and seizure protections are coextensive with the federal constitutional protections).

In *Ornelas v. United States*, the Supreme Court held that "determinations of ... probable cause should be reviewed *de novo* on appeal." 517 U.S. 690, 699, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996). The de novo review is an independent review and the Court has never "expressly deferred to the trial court's determination." *Id.* at 697, 116 S.Ct. 1657. Rather, the trial court's determination of probable cause is reviewed for abuse of discretion. *Id.* at 695 n. 3, 116 S.Ct. 1657. The trial court's probable cause determination is reviewed by establishing the facts and applying the law to those facts:

> The first part of the analysis involves only a determination of the historical facts, but the second is a mixed question of law and fact: "[T]he historical facts are admitted or established, the rule of law is undisputed, and the issue is whether the facts satisfy the [relevant] statutory or [or constitutional] standard, or to put it another way, whether the rule of law as applied to the established facts is or is not violated."

*Id.* at 696–97, 116 S.Ct. 1657 (quoting *Pullman–Standard v. Swint*, 456 U.S. 273, 289 n. 19, 102 S.Ct. 1781, 72 L.Ed.2d 66 (1982)). The Court cautioned that "a reviewing court should take care both to review findings of historical fact only for clear error and to give due weight to inferences drawn from those facts by resident judges and local law enforcement officers."[13] *Id.* at 699, 116 S.Ct. 1657. The reviewing court also should consider background facts such as "the distinctive features and events of the community" and the police officer's "lens of his police experience and expertise," that inform the trial court's assessment of the historical facts. *Id.* at 699–70, 116 S.Ct. 1657.

Likewise, this Court reviews probable cause determinations de novo under an abuse of discretion standard and gives deference to the inferences the trial court made from the historical facts, including the trial court's credibility determinations. *State v. Milliorn*, 794 S.W.2d 181, 183 (Mo. banc 1990). *Milliorn* illustrates how to apply the standard:

> The trial court is afforded the luxury of cool deliberation—an advantage generally unavailable to persons charged with actual enforcement of the law. Nevertheless, we review the trial court's decision on appeal under an abuse of discretion standard. Only if the trial court's judgment is clearly erroneous will an appellate court reverse. This standard of review gives appropriate deference to

13. The clear error standard of review of historical facts comes from the federal rules of civil procedure: "Findings of fact ... will not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses." Fed. R. Civ. Pro. 52(a) (as cited in *Anderson v. Bessemer City*, 470 U.S. 564, 573, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985)). The United States Supreme Court has interpreted the standard to mean "[w]here there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." *Id.* at 574, 105 S.Ct. 1504. The United States Supreme Court also has recognized that Rule 52(a) "emphasize[s] the special deference to be paid [to] credibility determinations." *Id.* While this Court is not bound by the federal rules of civil procedure, Missouri applies the same "clearly erroneous" standard to review of a trial court's probable cause determination for abuse of discretion. *State v. Milliorn*, 794 S.W.2d 181, 183 (Mo. banc 1990).

the trial court's ability to weigh the credibility of the witnesses, and acknowledges the inability of an appellate court to determine credibility from the lifeless pages of a record. Thus, if the trial court's ruling is plausible in light of the record viewed in its entirety, this Court "may not reverse it even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently."

*Id.* at 183–84 (citations omitted). Applying this standard, the Court found that, even though the trial court did not issue findings of fact, the record showed that the trial court apparently did not believe the trooper's testimony regarding his perception of the smell of marijuana in the searched compartment and, in light of the trial court's credibility determinations, its finding of no probable cause was not clearly erroneous. *Id.* at 184. Therefore, appellate courts must defer to the trial court's ability to weigh the credibility of the witness when reviewing de novo whether the officer had probable cause that the driver was intoxicated. *Wesley v. Dir. of Revenue,* 309 S.W.3d 442, 445–46 (Mo.App.2010); *Smith v. Dir. of Revenue,* 259 S.W.3d 84, 88–89 (Mo.App.2008); *Furne,* 238 S.W.3d at 180–81.

▮ Under this analysis, although Mr. White did not testify or introduce exhibits and he stipulated to the results of the blood alcohol test taken at the Henry County jail, Mr. White contested the factual and legal determination of probable cause. His cross-examination of the sergeant pointed out inconsistencies in the officer's testimony that called into question either his recollection of the events or his credibility and, as a result, undermined his testimony on direct examination and his statements in his written report. Because the director's evidence was contested, the trial court was free to accept or reject any or all of the sergeant's testimony regarding probable cause. *Furne,* 238 S.W.3d at 181.

The trial court could have believed that the sergeant was mistaken or applied an unreasonable standard regarding the indicia of intoxication that was the basis for the probable cause determination. While the sergeant stated that he noticed Mr. White because he was "speeding" when he drove past the officer's vehicle, in his alcohol influence report he indicated that Mr. White "slowly" passed his vehicle. The sergeant testified that he noticed a "strong odor" of intoxicants coming from Mr. White when Mr. White was in the patrol car, but he marked in his alcohol influence report that the odor was "moderate." He testified that he believed Mr. White was "swaying," but the conduct that he characterized as swaying was Mr. White moving in a one-inch circle—moving half an inch from the center in each direction—while taking the horizontal gaze nystagmus test. The sergeant also testified that he found that Mr. White failed the walk-and-turn test because Mr. White made one mistake in the complicated directions for the test.[14] Yet, when the officer testified to the directions he gave Mr. White for another field sobriety test, the one-leg-stand test, the officer made a mistake similar to Mr.

---

14. The sergeant's instructions to Mr. White for walk-and-turn test were that Mr. White was to stand on an imaginary line, place his hands down at his side, and then place his right foot in front of his left foot while standing on the imaginary line. Mr. White was then to take nine steps forward, touching heel to toe, while counting out loud. On the ninth step, Mr. White was to make a pivot with his left foot by taking a series of small steps and return the nine steps, counting out loud, and touching heel to toe. Mr. White followed all the instructions except that he made the pivot on his left foot by spinning rather than taking a series of small steps as instructed.

White's by failing to recite a part of the directions consistently.[15] Additionally, the trial court viewed the officer's demeanor when testifying, and such observations are a proper consideration in the court's assessment of the credibility of the director's evidence. *See Miller v. Fenton,* 474 U.S. 104, 114, 106 S.Ct. 445, 88 L.Ed.2d 405 (1985).

The record supports the trial court's conclusion that the sergeant lacked probable cause to arrest Mr. White for violating an alcohol-related offense. The trial court's judgment was not against the weight of the evidence.

**Trial Court Did Not Misapply the Law**

The director also argues that precedent overwhelmingly supports a finding of probable cause; therefore, the trial court misapplied the law. To support her argument, the director cites to numerous cases in which the trial court found that an arresting officer, under similar circumstances, had probable cause. This argument relies on the now-rejected presumption of validity of the director's evidence and does not take into account the trial court's ability to disbelieve the director's contested evidence.

 Whether probable cause existed always will depend on the particular facts of the case.

Probable cause to arrest exists when the arresting officer's knowledge of the particular facts and circumstances is sufficient to warrant a prudent person's be-

lief that a suspect has committed an offense.... There is no precise test for determining whether probable cause exists; rather, it is based on the particular facts and circumstances of the individual case.

*Guhr,* 228 S.W.3d at 584–585. In light of the standard of review, this Court defers to the trial court's view of the evidence and will not second guess the trial court on the contested facts. *Id.* at 585 n. 3; *Hinnah,* 77 S.W.3d at 620. As stated above, the trial court was free to believe or disbelieve any or all of the contested evidence at trial. *York,* 186 S.W.3d at 272. Moreover, the record shows that the sergeant's testimony created conflicts in the director's case. Although cases exist in which the trial court found the officer had probable cause on similar facts, the trial court was free to draw the conclusion there was no probable cause based on its determination of the credibility of the director's evidence. The trial court did not misapply the law.

**Conclusion**

In section 302.535, the legislature placed the burden of proof and the burden of production of evidence on the director and provided that trials de novo shall be conducted pursuant to the Missouri rules of civil procedure. In other respects, the general law and procedures governing court-tried civil cases apply. Because the director did not request written findings and, pursuant to Rule 73.01(c), the evidence on the contested issue of probable cause is viewed in the light most favorable to the judgment, the trial court could have

---

**15.** The sergeant described his instructions for the test as requiring Mr. White to stand on one foot while raising the other foot approximately six inches off the ground, while keeping that foot parallel to the ground. Mr. White was then required to count out loud for ten seconds by stating "one thousand one, one thousand two," etc., while looking at the tip of his toe. On cross-examination, the sergeant testified that Mr. White was instructed to point the toe of the raised foot toward the ground.

disbelieved the director's evidence and, therefore, its judgment was not against the weight of the evidence. Moreover, the trial court did not erroneously declare or misapply the law. Accordingly, the trial court's judgment is affirmed.

TEITELMAN, RUSSELL, WOLFF, FISCHER and STITH, JJ., concur.

PRICE, C.J., concurs in separate opinion filed.

WILLIAM RAY PRICE, JR., Chief Justice, concurring.

I concur in the result reached by the majority opinion. White contested the evidence against him. The record thus indicates a basis for the trial court to disbelieve the director's evidence. However, I would not overrule the long and consistent precedent of this Court established in *Guhr v. Dir. of Revenue*, 228 S.W.3d 581, 586 (Mo. banc 2007); *York v. Dir. of Revenue*, 186 S.W.3d 267, 272 (Mo. banc 2006); *Coyle v. Dir. of Revenue*, 181 S.W.3d 62, 65 (Mo. banc 2005); *Verdoorn v. Dir. of Revenue*, 119 S.W.3d 543, 546–547 (Mo. banc 2003); *Brown v. Dir. of Revenue*, 85 S.W.3d 1, 7 (Mo. banc 2002); *Reinert v. Dir. of Revenue*, 894 S.W.2d 162, 164 (Mo. banc 1995); *Berry v. Dir. of Revenue*, 885 S.W.2d 326, 328 (Mo. banc 1994).