**Audrey KIDD, Respondent,**

v.

**Quentin WILSON, Director of Revenue, Appellant.**

**No. WD 58308.**

Missouri Court of Appeals,
Western District.

May 29, 2001.

Motion for Rehearing and/or Transfer to Supreme Court Denied July 3, 2001.

Application for Transfer Denied
Aug. 21, 2001.

Marvin L. Andersen, Jefferson City, for appellant.

Abe Shafer, Weston, for respondent.

Before JOSEPH M. ELLIS, Presiding Judge, HAROLD L. LOWENSTEIN, and THOMAS H. NEWTON, Judges.

ELLIS, Judge.

The Director of Revenue appeals from a judgment entered in the Circuit Court of Platte County reinstating the drivers' license of Audrey Kidd.

Our review of a trial court's decision regarding the administrative suspension of a driver's license is governed by *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). "We will affirm the trial court's decision unless it is not supported by substantial evidence, is against the weight of the evidence, or misstates or misapplies the law." *Terry v. Dir. of Revenue*, 14 S.W.3d 722, 724 (Mo.App. W.D.2000). In reviewing the trial court's judgment, we view the evidence and all reasonable inferences drawn therefrom in the light most favorable to the judgment. *Hansen v. Dir. of Revenue*, 22 S.W.3d 770, 772 (Mo. App. E.D.2000).

■ At the outset, we note that the Director's brief fails to fully comply with Rule 84.04. Rule 84.04(c) provides that the statement of facts "be a fair and concise statement of the facts relevant to the questions presented for determination without argument." "This requirement serves to define the scope of the controversy and afford the appellate court an immediate, accurate, complete and unbiased understanding of the facts of the case." *Perkel v. Stringfellow*, 19 S.W.3d 141, 146 (Mo.App. S.D.2000). The Director's statement of facts sets forth the evidence in the light most favorable to her[1] position and completely disregards the evidence and testimony presented by Ms. Kidd at the hearing. "[A] statement of facts which emphasizes facts favorable to the appellant and omits facts essential to the respondent does not substantially comply with Rule 84.04(c)." *In re Marriage of Spears*, 995 S.W.2d 500, 502 (Mo.App. S.D.1999). "Such a violation of Rule 84.04 constitutes grounds for the dismissal of [the] appeal, although we hesitate to dismiss an appeal for this reason alone." *In re Marriage of Gerhard*, 34 S.W.3d 305, 307 (Mo.App.S.D. 2001). For the latter reason, despite the violation of Rule 84.04(c), we will address the issues raised on appeal.

At approximately 1:50 a.m. on October 3, 1999, Missouri State Highway Trooper Michael Moats observed Audrey Kidd driving her pickup truck on Barry Road in Platte County, Missouri, without any operating headlights. After Trooper Moats stopped her, he asked Ms. Kidd to step out of her truck. Trooper Moats observed that she had bloodshot eyes and smelled of alcohol. He further noted that she swayed while she was standing still and that her speech was slurred.

Trooper Moats then conducted a horizontal gaze nystagmus test and the one-leg stand test on Ms. Kidd. After determining that Ms. Kidd failed both tests, Trooper

1. At the time of the district court hearing, the Director of Revenue was Quentin Wilson, however, the current Director of Revenue is Carol Russell Fischer. Accordingly, we will refer to the Director of Revenue as "she" or "her" throughout this opinion.

Moats administered a portable breath test on Ms. Kidd. When Ms. Kidd asked Trooper Moats the results of that test, Trooper Moats told her that he did not have to reveal the results to her and that she would "never know" what they were.[2]

After administering these three tests, Trooper Moats placed Ms. Kidd under arrest, but did not inform her of her *Miranda* rights. Trooper Moats then transported Ms. Kidd to the Platte County Jail.

Upon arriving at the jail, Trooper Moats asked Ms. Kidd to submit to a blood alcohol test. He told her that her license would be suspended for a year if she refused to take the test. Ms. Kidd then asked Trooper Moats several questions about the breath test and what would happen if she refused to take it. After Trooper Moats answered her questions, at 2:15 a.m., she indicated that she did not want to take the test.

Subsequently, after Trooper Moats began doing some paperwork related to her arrest, Ms. Kidd stated that she had changed her mind and would take the test. However, after Trooper Moats set up the equipment, she again refused to take the test.

Thereafter, at 2:30 a.m., Trooper Moats informed Ms. Kidd of her *Miranda* rights. He then served her with a notice of license revocation and submitted his report to the Director of Revenue.

On October 13, 1999, Ms. Kidd filed a petition for review in the Circuit Court of Platte County. The circuit court conducted a hearing on the matter on January 20, 2000. On January 24, 2000, the trial court entered its judgment. The judgment stated:

Evidence was heard and the Court finds that the Petition for Review and Application to Set Aside Revocation Of Driver's License for Refusal to Submit to a Chemical Test filed by Petitioner, Audrey L. Kidd, should be sustained.

WHEREFORE, IT IS ORDERED, ADJUDGED AND DECREED that the revocation of the driving privilege of Petitioner, Audrey L. Kidd ... is hereby set aside and Petitioner is authorized to operate a motor vehicle.

■ The Director brings two points on appeal. In her first point, the Director contends that the trial court erred in reinstating Ms. Kidd's license because she had "proven" all of the elements necessary to support the revocation of a driver's license.

■ "To uphold the revocation of a driver's license for refusal to submit to a chemical test, the trial court shall determine only the following: 1) whether the driver was arrested; 2) whether the arresting officer had reasonable grounds to believe the driver was driving while intoxicated; and 3) whether the driver refused to submit to the test." *Brown v. Dir. of Revenue*, 34 S.W.3d 166, 169 (Mo.App. W.D.2000) (citing *McMaster v. Lohman*, 941 S.W.2d 813, 815 (Mo.App. W.D.1997)). "The Director of Revenue has the burden of proof, and failure to satisfy the burden will result in the reinstatement of the driver's license." *Id.* (citing *McMaster*, 941 S.W.2d at 815–16). If the trial court determines that one or more of the necessary criteria has not been met, the court is required to order the reinstatement of driving privileges. *Berry v. Dir. of Revenue*, 885 S.W.2d 326, 328 (Mo. banc 1994).

The Director claims to have satisfied all of the necessary elements to support the revocation of Ms. Kidd's driver's license. In support of her argument, the Director

2. In later filling out the alcohol incident report, Trooper Moats indicated that he had given Kidd the portable breath test, but he failed to indicate the results of that test.

points out evidence that would have supported findings in her favor on each of these elements.

In making this argument, the Director fails to recognize our standard of review. The Director argues the evidence in the light most favorable to her position and completely ignores the contrary evidence presented by Ms. Kidd at the hearing.

"On appeal, the judgment of the trial court is presumed to be correct and shall be affirmed under any reasonable theory supported by the evidence." *Keller v. Dir. of Revenue*, 947 S.W.2d 478, 479 (Mo.App. E.D.1997) (citing *Berry*, 885 S.W.2d at 328); *Jarrell v. Dir. of Revenue*, 41 S.W.3d 42 (Mo.App.S.D.2001); *Simmons v. Dir. of Revenue*, 3 S.W.3d 897, 899 (Mo.App. S.D. 1999). "The trial court is afforded wide discretion even if there is evidence in the record which would support a different result." *Buckley v. Dir. of Revenue*, 4 S.W.3d 152, 154 (Mo.App. E.D.1999). "[A]ll fact issues are deemed to have been found in accordance with the result reached." *Berry*, 885 S.W.2d at 328. Under our standard of review, we must view the evidence and all reasonable inferences in the light most favorable to the trial court's judgment, "even if there is evidence that would support a different result." *Rhodes v. Dir. of Revenue*, 994 S.W.2d 597, 600 (Mo.App. S.D.1999). Indeed, we must disregard all contrary evidence and permissible inferences that could have been drawn therefrom. *M.F.M v. J.O.M*, 889 S.W.2d 944, 957 (Mo.App. W.D.1995).

Ms. Kidd did not dispute that she was arrested and that the trooper had reasonable grounds to believe she had been driving while intoxicated. However, she did present substantial evidence to support a finding that she was not informed of the consequences of refusing to take the test and, therefore, was unable to make an informed decision whether to take the test.

■ "Section 577.041.1 provides that an officer's request to submit to a breathalyzer test 'shall include the reasons of the officer for requesting the person to submit to a test and also shall inform the person that evidence of his refusal to take the test may be used against him and that his license shall be immediately revoked upon his refusal to take the test.' " *Buckley*, 4 S.W.3d at 153 (quoting *Section 577.041.1*). "These warnings have been called the 'Implied Consent Law' or 'Implied Consent Warning.' " *Buckley*, 4 S.W.3d at 153. "The Implied Consent Law mandates that the arrestee be advised of his rights and the consequences of waiving those rights." *Brown*, 34 S.W.3d at 171. " 'The purpose of the warning provided in section 577.041.1 is to inform an apparently inebriated driver of the consequences that follow a refusal to consent to a chemical test to determine blood alcohol content.' " *Douglass v. Wilson*, 10 S.W.3d 199, 204 (Mo. App. W.D.2000) (quoting *Teson*, 937 S.W.2d at 197). These warnings are required so that the arrested driver may make informed choices about exercising her rights. *Brown*, 34 S.W.3d at 171.

"In *Teson v. Director of Revenue*, 937 S.W.2d 195 (Mo. banc 1996), the Missouri Supreme Court adopted an actual prejudice standard to determine whether the warning given in a license revocation for failure to submit to a chemical test is sufficient under Section 577.041.1." *Tharp v. Dir. of Revenue*, 969 S.W.2d 330, 332 (Mo.App. E.D.1998). Under this standard, the warning given by the officer is sufficient " 'unless the words used either (1) fail to inform the arrestee of all of the consequences of refusal or (2) mislead the arrestee into believing that the consequences of refusal are different than the law actually provides.' " *Id.* (quoting *Teson*, 937 S.W.2d at 197). "In either of these instances, the warning fails because

it prejudices the arrestee's decisional process and makes the arrestee's decision uninformed." *Id.* "No refusal is valid if the arresting officer's 'request' omits statutorily necessary information." *Brown,* 34 S.W.3d at 171. Accordingly, the Director must establish that the driver was properly informed under the Implied Consent Law in order to prove that the driver's refusal to take the blood alcohol test warrants revocation of his or her license.

■ "In a driver's license revocation proceeding, the trial court is accorded wide discretion on factual issues and the conclusions that follow." *Hansen,* 22 S.W.3d at 772. "In determining if there is substantial evidence, we defer to the ability of the trial court to ascertain the facts and to judge the credibility of the witnesses." *Buckley,* 4 S.W.3d at 154. "[T]he trial court may accept or reject all, part or none of the testimony of any witness." *Id.*

At the license revocation hearing, Ms. Kidd testified that Trooper Moats did not consult any form or document when he asked her to submit to the blood alcohol test. She testified that the subject matter of his conversation with her related to how her refusal to take the test might affect her driving privileges. Ms. Kidd stated that Trooper Moats informed her that the difference between taking the test and not taking the test was that her license would be suspended for a year if she refused to take the test and that it would only be a ninety day suspension if she took it. She testified that Trooper Moats did not inform her that her refusal to submit to the test could be used against her in a criminal prosecution. Ms. Kidd said that Trooper Moats never even told her why she had been placed under arrest. She also testified that she would have consulted with an attorney about whether to take the blood alcohol test if she had known that she could have consulted with counsel.

While Trooper Moats testified that he did advise Ms. Kidd of the Implied Consent Warning, the trial court was presented with conflicting testimony regarding the warnings and advice provided. The trial court was entitled to assess the credibility of this evidence and to accept or reject all, part or none of the testimony of either of the witnesses. *Buckley,* 4 S.W.3d at 154. The trial court was not required to accept or place any weight on Trooper Moats' testimony regarding the warnings he provided to Ms. Kidd. Ms. Kidd specifically testified that she was not informed that her refusal to take the test could be used against her in a criminal prosecution. Her testimony sufficiently supports a finding that she was not provided with all of the advice required by statute. As a result, she was unable to make an informed decision whether to take the test, and consequently, her refusal cannot form the basis for revocation of her license.[3] Point denied.

In her second point, the Director argues that the trial court erroneously reinstated

---

3. There is an additional area of concern but, based on this finding, we need not address it in detail. However, according to the record, Trooper Moats and Ms. Kidd testified that after Trooper Moats asked her to take the blood alcohol test, Ms. Kidd had several questions about the test and the consequences of refusing to take it. Both the trooper and Ms. Kidd testified that he attempted to answer her questions. From the record, it appears that some of his advice to her may have been incorrect or misleading. While Trooper Moats' may have been trying to be beneficent, and his motives benign, the fact that the he may have provided Ms. Kidd with legal advice regarding the effect of a civil statute that went beyond the scope of the implied consent warnings prescribed by the statute, without informing her that she could consult with an attorney regarding her questions, raises further concerns about whether Ms. Kidd could have made an informed decision regarding the test.

Ms. Kidd's license based on the fact that she was not informed that she had the right to consult with an attorney.[4] The Director maintains that the trial court latched onto certain language in *McMaster v. Lohman,* 941 S.W.2d 813 (Mo.App. W.D. 1997), and erroneously held that Ms. Kidd was entitled to be advised that she had a right to consult with counsel before deciding whether to take the blood alcohol test.

The Director's argument is based on certain comments made by the trial court during the course of announcing its decision. This was a court-tried case, and neither party requested findings of fact and conclusions of law pursuant to Rule 73.01(a)(3). Therefore, to the extent the comments could be regarded as findings of fact and/or conclusions of law, they are gratuitous only. *Testerman v. Dir. of Revenue,* 31 S.W.3d 473, 477 (Mo.App. W.D. 2000).

> "In a judge-tried case, our review is not limited to determining whether the trial court's judgment was correct based solely on its gratuitous findings and conclusions. Rather, because we are primarily concerned with whether the result reached by the trial court was correct, not necessarily the course taken to reach it, we will not only affirm the judgment … if it was correct on the basis or theory gratuitously found by the court, but on any reasonable theory supported by substantial evidence."

*Id.* (internal citations omitted).

Consequently, we need not address the Director's contention further. We have already determined, *supra,* that Ms. Kidd's refusal to take the test was not an informed decision and cannot form the basis for the revocation. Thus, the trial court's judgment is sustainable on a reasonable theory supported by substantial evidence, and this renders the Director's contention in Point II moot.

The judgment is affirmed.

All concur.

---

4. During the hearing, Trooper Moats testified that he did not inform Ms. Kidd that she had a right to consult with an attorney until after he determined that she had refused to take the breath test and read her the *Miranda* warnings.