Richard A. ZAHNER, Respondent,

v.

DIRECTOR OF REVENUE, STATE of Missouri, Appellant.

No. WD 72801.

Missouri Court of Appeals, Western District.

Sept. 13, 2011.

Chris Koster, Attorney General, James B. Farnsworth and Jamie Pamela Rasmussen, Assistant Attorneys General, Jefferson City, MO, for Appellant.

David A. Yarger, Versailles, MO, for Respondent.

Before Division IV: LISA WHITE HARDWICK, Chief Judge, Presiding, MARK D. PFEIFFER, Judge, and BRAD FUNK, Special Judge.

MARK D. PFEIFFER, Judge.

The Director of the Missouri Department of Revenue ("Director") appeals the

Judgment of the Circuit Court of Miller County, Missouri ("trial court"), reinstating the driving privileges of Richard A. Zahner ("Zahner") after administrative revocation by the Director. We affirm.

## Facts and Procedural History

Zahner was pulled over by Officer Shane Pierce ("Officer Pierce") of the Lake Ozark Police Department in the early morning hours of July 5, 2009, for swerving across the center line. When Officer Pierce talked to Zahner, he noticed that Zahner's eyes were bloodshot and that Zahner smelled like alcohol. Officer Pierce asked Zahner to perform some field sobriety tests, which Zahner failed.

Officer Pierce took Zahner to the police department. Officer Pierce asked Zahner to take a breath alcohol test. According to Officer Pierce, Zahner refused to take the test. Zahner maintained that he never refused to take the test, and Zahner claims that Officer Pierce never read him the implied consent warning required by section 577.041.1.[1]

Zahner's driver's license was administratively revoked by the Director.[2] Zahner filed a petition for review, and the trial court held an evidentiary hearing, in which the trial court heard the widely divergent testimony of Officer Pierce and Zahner. At the hearing, Officer Pierce testified that any confusion over whether he had read the implied consent warning to Zahner and whether Zahner refused the test could be cleared up by a video recording of Zahner's booking at the police station. Notably, the trial court instructed the Director to produce the videotape—strongly sug-

gesting that the trial court was not convinced that Officer Pierce's testimony alone was sufficient to convince the trial court that Zahner had been read the implied consent warning or otherwise refused the breath alcohol test. The trial court continued the hearing so that the videotape could be produced to the trial court for review. A week later, however, counsel for the Director advised the trial court that the videotape had been "destroyed as part of the post arrest routine."

In its judgment, the trial court noted, in pertinent part:

The Court is also troubled by the officer's assurance that the recordings were available only to be advised one week later that the recordings had been ". . . destroyed as part of the post arrest routine." The Court chooses not to infer that the destruction occurred after the officer's assurance.

. . . .

The "policy" here alleged causes the Court to ask, "If the recordings are not preserved for evidentiary purposes then why are they made in the first instance? Are they gleaned to preserve evidence favorable to the arresting agency in support of their cases and the rest purged so as to be unavailable to a party opponent?"

Left without production of the corroborating evidence promised by Officer Pierce, the trial court weighed the credibility of the conflicting evidence and ruled in favor of Zahner, entering judgment requiring that the Director reinstate Zahner's driving privileges.

The Director appeals.

1. All statutory references are to the Revised Statutes of Missouri (2000), unless otherwise indicated.

2. Zahner faced both (1) criminal proceedings for driving while intoxicated and (2) adminis-

trative license revocation (i.e., civil proceeding) for his alleged refusal to take a breath alcohol test. This appeal relates to the administrative revocation of Zahner's driving privileges only.

## Standard of Review

A trial court's judgment in a driver's license revocation case under section 302.535, RSMo Cum.Supp.2010, is reviewed as any court-tried civil case. *White v. Dir. of Revenue*, 321 S.W.3d 298, 307 (Mo. banc 2010). In an appeal from a court-tried civil case, we will affirm the trial court's judgment unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. *Id.* at 307–08 (citing *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976)). "When the facts relevant to an issue are contested, the reviewing court defers to the trial court's assessment of the evidence." *Id.* at 308. This is because the trial court " 'is in a better position not only to judge the credibility of witnesses and the persons directly, but also their sincerity and character and other trial intangibles which may not be completely revealed by the record.' " *Id.* at 308–09 (citation omitted).

## Analysis

Even though the spoliation doctrine may not be applicable to the *Director* for the conduct of *law enforcement officers*, this case illustrates the practical dilemma a law enforcement agency faces when it destroys relevant evidence—i.e., the risk that the arresting officer's testimony may not be accorded the credibility that the officer (and the Director) might like for such testimony to receive.[3]

## Implied Consent Law

■ Section 577.020.1(1) provides that all persons who operate a motor vehicle in the State of Missouri have consented to a test of their breath, blood, saliva, or urine to determine their blood alcohol or drug content if they are arrested for any offense arising out of acts for which the arresting officer had reasonable grounds to believe were committed while they were driving while in an intoxicated or drugged condition. *Hursh v. Dir. of Revenue*, 272 S.W.3d 914, 916 (Mo.App. W.D.2009). Conversely,

> "Section 577.041.1 provides that an officer's request to submit to a breathalyzer test 'shall include the reasons of the officer for requesting the person to submit to a test and also shall inform the person that evidence of his refusal to take the test may be used against him and that his license shall be immediately revoked upon his refusal to take the test.' These warnings have been called the 'Implied Consent Law....' "

*Kidd v. Wilson*, 50 S.W.3d 858, 862 (Mo. App. W.D.2001) (citation omitted) (quoting *Buckley v. Dir. of Revenue*, 4 S.W.3d 152, 153 (Mo.App. E.D.1999)).

■ Pursuant to section 577.041.4, the trial court's review of the revocation of a driver's driving privileges for failure to submit to a breath test is limited to a determination of whether the Director of Revenue established that: (1) the person was arrested; (2) the arresting officer had reasonable grounds to believe that the person was driving while intoxicated; and (3) the person refused to submit to the test. If one of these elements is not established, the trial court must order the reinstatement of driving privileges. § 577.041.5. Moreover, when a driver is not informed of the consequences of a test refusal—as Zahner claims he was not—the driver is "unable to make an informed decision

---

3. When faced with destroyed evidence—but not applying the spoliation doctrine—the trial court is free to "believe all, part or none of the officer's testimony" and is "free to consider the failure to produce the video and audio recordings in its decision." *Douglas v. Dir. of Revenue*, 327 S.W.3d 555, 557 n. 3 (Mo.App. S.D.2010).

whether to take the test, and consequently, [the driver's] refusal cannot form the basis" for revocation. *Kidd,* 50 S.W.3d at 863; § 577.041.1. To be sure, no test refusal is valid if the officer's request for testing "omits statutorily necessary information," like the consequences of refusal. *Brown v. Dir. of Revenue,* 34 S.W.3d 166, 171 (Mo. App. W.D.2000). "[T]he Director must establish that the driver was properly informed under the Implied Consent Law in order to prove that the driver's refusal to take the blood alcohol test warrants revocation of his or her license." *Kidd,* 50 S.W.3d at 863.

### Spoliation Doctrine

 Missouri courts have long recognized the spoliation doctrine, which pertains to the destruction or significant alternation of evidence. If a party intentionally spoliates evidence, the party is subject to an adverse evidentiary inference. "The standard for application of the spoliation doctrine requires that 'there is evidence of an intentional destruction of the evidence indicating fraud and a desire to suppress the truth.'"
*Prins v. Dir. of Revenue,* 333 S.W.3d 17, 20 (Mo.App. W.D.2010) (internal citations omitted).

 The spoliation doctrine, though, is generally inapplicable against the Director when police departments destroy evidence because the police do not generally act as the Director's agents, absent evidence showing that the Director " ' "directed, encouraged, or in any other way took part in

the destruction." ' " [4] *Id.* at 22 (quoting *Baldridge v. Dir. of Revenue,* 82 S.W.3d 212, 223 (Mo.App. W.D.2002)).

 There is no rule of law, however, that requires the trial court to ignore the destruction of evidence—even if the trial court finds no evidence of fraud, deceit, or bad faith—when the trial court is weighing the credibility of the witnesses in an evidentiary proceeding.

### Trial Court's Weighing of the Evidence—Including Witness Credibility

When evidence is contested by disputing a fact in any manner, this Court defers to the trial court's determination of credibility. A trial court is free to disbelieve any, all, or none of that evidence. Appellate courts defer to the trial court on factual issues because it is in a better position not only to judge the credibility of witnesses and the persons directly, but also their sincerity and character and other trial intangibles which may not be completely revealed by the record.

*White,* 321 S.W.3d at 308–09 (internal citations omitted).

 The evidence in this case was hotly contested on numerous disputed facts. But, the trial court did not limit either party's opportunity to present evidence in support of their respective positions. Unlike the *Prins* and *Baldridge* cases,[5] the trial court permitted the Director to present all evidence in her possession supporting the administrative revocation of

---

4. There is no such evidence in the present case.

5. In *Prins,* upon the Director's failure to produce the video evidence (due to destruction of the video), the trial court not only applied an adverse inference upon the Director, but actually refused to permit the Director to present

evidence to establish its prima facie case and effectively directed a verdict for Mr. Prins. 333 S.W.3d at 19. Similarly, in *Baldridge,* upon the Director's failure to produce the video evidence (again due to destruction of the video), the trial court directed a verdict for Mr. Baldridge. 82 S.W.3d at 224.

Zahner's driving privileges and likewise permitted Zahner to present his rebuttal evidence before the trial court issued its judgment. Further, the trial court included language in its judgment that it was *not* inferring bad faith in the destruction of the relevant videotape. In fact, the trial court does not even mention the spoliation doctrine in its judgment.[6] However, in the trial court's judgment, the trial court notes that it found the destruction of the videotape as "troubling" and "odd" enough such that "under the circumstances of this case," the trial court refused to believe the Director's evidence supporting administrative revocation of Zahner's driving privileges and instead chose to believe Zahner's rebuttal evidence.[7] This is not to say that a different trier of fact could not have concluded differently. The Director made a prima facie evidentiary showing in support of administrative license revocation, and the trial court could have chosen to accept the Director's evidence in support of the revocation of Zahner's license— with or without corroborating video evidence. But, the trial court heard conflicting evidence on the claim that Zahner refused the breath alcohol test and whether Zahner had been properly warned of the Implied Consent Law, and after weighing all of the conflicting evidence, this trier of fact chose to believe Zahner's version of events that he did not refuse the breath alcohol test and that he had not been properly advised of the Implied Consent Law. There is substantial evidence in the record to support the trial court's judgment.

## Conclusion

Because: (1) the trial court permitted both parties to present their respective conflicting evidence and did *not* direct a verdict for Zahner due to an erroneous application of the spoliation doctrine but,

6. The Director claims on appeal that the trial court did, in fact, erroneously apply the spoliation doctrine to the Director's case in chief in this case. We disagree. Interpreting a trial court's judgment is a question of law and, even if we conclude that the intent of the judgment was ambiguous, it is the role and function of this court to ascertain the trial court's intent by searching the entire record for clues as to the trial court's intent. *Prins,* 333 S.W.3d at 20. In this case, the record reflects that the trial court heard both parties' divergent version of events. The Director's witness volunteered the booking videotape as, effectively, the "tie breaker" evidence. Had the trial court been convinced that sufficient evidence existed to affirm the Director's administrative suspension, there would have been no need to supply the video. To the contrary, the trial court requested production of the video and, upon the failure of the Director's witness to produce it as promised, the trial court "inferred" that the Director's evidence was not believable "under the circumstances." The circumstances were, specifically, that the witness was unable to produce a corroborating video—due to its destruction—that the witness claimed was available when testifying at the hearing. While the trial court could have avoided any confusion by eliminating the use of the word "inference" in its judgment, any reference to the word was in relation to the trial court "breaking the tie" by the Director's witness being unable to produce the corroborating evidence that had been promised during the evidentiary hearing. By promising evidence that was later discovered to be destroyed, the Director's witness, and prima facie evidence, lost credibility with the trial court.

7. We find it significant that the Director's witness is the one that first mentioned the videotape evidence and did so in a manner as to suggest to the trial court that the videotape both existed and would corroborate his testimony. While there was no requirement for the Director or the Director's witness to attempt to bolster testimony in this fashion, upon doing so, it is hard to convict the trial court for finding the witness testimony to lack credibility when the self-professed testimony-bolstering evidence cannot then be produced due to its destruction.

instead, considered *all* the evidence and claims of the witnesses in weighing the evidence and witness credibility; and (2) there is substantial evidence in the record to support the trial court's judgment, the judgment of the trial court is affirmed.

LISA WHITE HARDWICK, Chief Judge, and BRAD FUNK, Special Judge, concur.