Austin C. BREWER, Respondent,

v.

DIRECTOR OF REVENUE, State
of Missouri, Appellant.

No. SD 31433.

Missouri Court of Appeals,
Southern District,
Division One.

Oct. 12, 2012.

Chris Koster, Atty. Gen. and John W. Grantham, Assist. Atty. Gen., for Appellant.

Kyle E. Walsh, Poplar Bluff, MO, for Respondent.

WILLIAM W. FRANCIS, JR., J.

The Director of Revenue ("Director") revoked the driving privileges of Austin C. Brewer ("Brewer") pursuant to section 577.041.[1] The trial court reversed the revocation after finding there were no reasonable grounds for the arresting officer to

---

1. All references to statutes are to RSMo 2000, unless otherwise indicated.

believe Brewer was driving in an intoxicated or drugged condition. Director appeals that finding. We reverse and remand.

## Factual and Procedural Background

The record reveals that on October 23, 2010, Lindel Gregory, a ranger with the National Park Service ("Ranger Gregory"), was "responding to a wildfire" when his vehicle came up behind that of Brewer and he observed Brewer "driving to the left of the centerline. . . ." After watching Brewer's vehicle "straddling the centerline" for a short distance, Ranger Gregory continued to follow the vehicle "to make sure it wasn't just someone that was inattenti[ve]." He then witnessed Brewer's vehicle travel "completely into the oncoming lane as [they] were kind of going up over a hill and around a curve." Believing Brewer to be "a danger to the public[,]" Ranger Gregory then "contacted" the Shannon County Sheriff's Department "and requested a deputy or trooper." Apparently, while Ranger Gregory was contacting the sheriff's department, Brewer "pulled off to the side of the road" at which time Ranger Gregory "activated [his] emergency lights and pulled to the side of the road. . . ." He "had contact with [Brewer]"; "talked to him for just a brief moment"; "asked him to get out of [his] vehicle"; and at some point requested to see his driver's license. He related to Brewer that he had "observed [Brewer's] driving behavior and [he] felt like it was kind of a danger, and that [Brewer] would be detained [until] a state officer arrived."

Approximately forty-five minutes later, Paul Wells, a trooper with the Missouri State Highway Patrol ("Trooper Wells"), accompanied by a Corporal Cravens, arrived on the scene and Ranger Gregory informed them of "what [he] had observed and asked them if [he] needed [to do] anything further. [He] told them that [he]

was en route to a wild land fire, and Corporal Cravens told [him to] go ahead and continue on." Ranger Gregory performed no field sobriety tests on Brewer, did not administer a breathalyzer or other test, and had no other involvement in the matter before he departed.

Trooper Wells, who prior to his arrival had been advised that "a National Park Service Ranger had detained an individual on [Highway] 106 he believed was possibly intoxicated[,]" took over the situation after speaking with Ranger Gregory for less than five minutes. Trooper Wells spoke with Brewer, requested that he accompany him to his patrol car, and "performed a registration check of his vehicle and his driving status." Trooper Wells "noticed a strong odor of intoxicating beverage on [Brewer's] breath while he was seated in [his] vehicle." Brewer then agreed to perform a series of field sobriety tests. Trooper Wells reported there was a lack of "smooth pursuit in both [Brewer's] eyes" on the horizontal gaze nystagmus test; Brewer had "[q]uite some difficulty" in performing the walk-and-turn test such that he had to "be directed out of the highway several times"; and Brewer had "difficulty" with the one-leg-stand test and had to be re-instructed. Trooper Wells then informed Brewer he believed him to be "intoxicated and placed [Brewer] under arrest for driving while intoxicated." Brewer was then handcuffed and placed in Trooper Wells' patrol vehicle. He was thereafter transported to the Ellington Police Department. While Brewer was being transported, Trooper Wells did not actively question him although Brewer "voluntarily stated several times that he knew that he had done wrong and that he shouldn't have been drinking that evening." Once at the police department, Brewer was advised of his *Miranda*[2] rights and, after being read the Implied

---

2. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

Consent form, refused to consent to a test of his breath for alcohol.

Brewer filed his "PETITION TO SET ASIDE REVOCATION" on November 1, 2010, in which he requested the trial court set aside the revocation of his driving privileges by Director on the basis that "there was no probable cause for the arresting officer to stop the vehicle being driven by [Brewer]"; there was no "probable cause to believe [Brewer] had been driving while intoxicated"; "the arresting officer did not apprise [Brewer] of the consequences under the law should he fail and refuse to take the breathalyzer test"; Brewer "did not in fact refuse to take the test"; and Brewer "requested to phone/contact a lawyer regarding the breathalyzer test and his request was denied by the arresting officer prior to making a decision as to whether he should or should not take the test."

On May 25, 2011, a hearing was held.[3] While both Ranger Gregory and Trooper Wells testified at the hearing, Brewer did not present any evidence, and his counsel concentrated his argument to the trial court on the assertion that the initial detention by Ranger Gregory was unlawful in that Ranger Gregory did not have authority to detain Brewer as part of the initial stop. The trial court entered its "JUDGMENT" on May 26, 2011, in which

it found, "having heretofore suppressed any and all evidence resulting from the stop of [Brewer]," that although Brewer was "stopped and arrested" Trooper Wells "did not have reasonable grounds to believe that [he] was driving a motor vehicle while in an intoxicated or drugged condition." As a result, the trial court found the "revocation proceedings of the Missouri Department of Revenue of [Brewer's] privilege to operate a motor vehicle in the State of Missouri [are] set aside and held for naught." This appeal by Director followed.

At issue in Director's sole point relied on is whether the trial court erred in excluding evidence relating to Brewer's intoxication by applying the exclusionary rule in a civil license revocation proceeding.

## Standard of Review

Our review is governed by *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976), in driver's license suspension and revocation cases. *Connelly v. Dir. of Revenue*, 291 S.W.3d 318, 319 (Mo.App. E.D.2009). As a result, the judgment of the trial court will be affirmed unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. *White v. Dir. of Revenue*, 321 S.W.3d 298, 307–08 (Mo. banc 2010).[4] We view the evidence in the

---

**3.** Although discussed more fully within this opinion, it appears the aforementioned facts were actually adduced at a hearing on a motion to suppress in Brewer's companion criminal case as opposed to a separately held hearing on his petition for review. The better practice would be to have separate hearings on the civil case and criminal case, or a clear stipulation on the record confirming the procedure the parties are using for the hearing.

**4.** *White* involved the review of a driver's license suspension under section 302.535 rather than the review of a license revocation under section 577.041, as in the present matter. Yet, due to the similarities in these stat-

utes, our Supreme Court "has cited to section 577.041 cases interchangeably with section 302.535 cases when discussing the issues related to probable cause, the standard of review, and the deference given to implicit and explicit factual findings." *Id.* at 305 n. 6. We do likewise in this opinion without any further indication or discussion.

We also note that our high court's ruling in *White* necessarily overrules prior case law dealing with standards of review and other considerations relating to these types of sections 577.041 and 302.535 cases. To the extent cases cited in this opinion are in conflict with the holding in *White*, they are cited here-

light most favorable to the judgment and where the facts relevant to an issue are contested, deference is given to the circuit court's assessment of that evidence. *Id.*

## Analysis

 It has long been the case that "[t]he operation of a motor vehicle while intoxicated may give rise to two proceedings, one criminal ... and the other civil (revocation of license) each proceeding independent of the other." *Tolen v. Missouri Dept. of Revenue,* 564 S.W.2d 601, 602 (Mo.App. K.C.D.1978). Strangely enough, it appears from the parties' briefs that in this matter, the only evidence considered by the trial court in ruling on Brewer's civil petition for review was adduced at a suppression hearing relating to the criminal charges pending against Brewer. *See Woodard v. Dir. of Revenue,* 876 S.W.2d 810, 811 (Mo.App. S.D.1994) (holding that where a fact is asserted in one party's brief and conceded to be true in the adversary's brief, we may consider it as though it appears in the record). While we have little information in the record relating to the criminal charges against Brewer or the issues in his motion to suppress, the transcript reveals the following arguments:

[PROSECUTING ATTORNEY]: I don't have any—

THE COURT:—produce evidence?

[COUNSEL FOR BREWER]: No, I don't have any evidence, Judge. I—I think that the law is about as clear as it can be on this. You can't be detained in custody, held up, stopped, prevented from leaving by law enforcement officers who do not have jurisdiction. That's an illegal detention. It's a violation of the 4th Amendment. And, therefore, all evidence obtained after violation of the 4th Amendment is fruit of the poisonous

tree and we would ask that our motion to suppress be sustained.

THE COURT: [Prosecuting Attorney], response?

[PROSECUTING ATTORNEY]: My—My response is that he was never arrested. That—

THE COURT: That—That's—Move on from there. Tell me something that—I don't want to—hear that argument about detention verses [sic] arrest.

[PROSECUTING ATTORNEY]: Well, that was about all I was going to offer at this time. The—Well, we were going to suggest that there was certainly an emergency situation that required some attention, and the ultimate question is whether or not that stop was within his authority.

And I would suggest to the Court, if they'd take judicial notice of two statutes, one of which is 70.820 and the—or the Section 1, 2 and 7 spells out the authority that a federal law enforcement officer has—excuse me, I need to add section 8 as well—as far as responding to emergencies.

The definition of law enforcement officers is found in [s]ection 556.061, and then sub-paragraph 17 describes law enforcement officers as any public servant having both the power and duty to make arrests for violations of this state—laws of this state and federal law enforcement officers authorized to carry firearms and to make arrests for violations of the laws of the United States. And I don't see detention mentioned in there, but—but those, I believe, are the operative statutes, if the Court takes judicial notice, as to the authority that a Federal Officer such as [Ranger] Gregory would have had at the time.

in to support other principles of law not af-

fected by the *White* ruling.

THE COURT: Are you interested in briefing this, [attorneys]?

[PROSECUTING ATTORNEY]: I—I'm satisfied with whatever you've got on the record at this time.

THE COURT: [Counsel for Brewer], are you satisfied?

[COUNSEL FOR BREWER]: Yes, Judge, because I—the—the U.S. Code and [Ranger Gregory] testified what his jurisdiction was. I'm not disputing the fact that he's a law enforcement officer. Just law enforcement officer from New York wouldn't have any authority to stop and detain someone here and neither does [Ranger] Gregory. And that's the 4th Amendment violation that we're addressing.

[PROSECUTING ATTORNEY]: And, Judge, with all due respect, he's right unless that law enforcement officer would have requested—assistance been requested or if he'd been involved in a task force or some kind of a joint investigative type of agency.

THE COURT: Well, the Court will take this under advisement for decision then. Thank you.

Based on the trial court's notation in the civil Judgment that "[t]his court having heretofore suppressed any and all evidence resulting from the stop of [Brewer]," it appears the trial court granted Brewer's motion to suppress in the criminal case.

 We are mindful that the sole issue here is the civil proceeding relating to the revocation of Brewer's driving privileges for failure to comply with the Implied Consent law. *See* § 577.041.4. As such, the only issues to be decided by the trial court at the hearing were: "(1) whether or not [Brewer] was arrested or stopped; (2) whether [Trooper Wells] had reasonable grounds to believe [Brewer]

was driving a motor vehicle while in an intoxicated or drugged condition; and (3) whether or not [Brewer] refused to submit to the test." *Hinnah v. Dir. of Revenue,* 77 S.W.3d 616, 620 (Mo. banc 2002); § 577.041.4. This list of elements found in section 577.041 is very specific about what the trial court can consider at such a hearing and it does not require a showing that the initial stop was valid or even that the arrest was lawful. *Hinnah,* 77 S.W.3d at 618–21.

 Here, it appears, based on the wording in the trial court's Judgment, that it found "as a matter of law" Trooper Wells "did not have reasonable grounds to believe [Brewer] was driving a motor vehicle while in an intoxicated or drugged condition" because of the fact that the trial court had "heretofore suppressed any and all evidence resulting from the stop of [Brewer]." The suppression or exclusion of evidence via the exclusionary rule[5] is not an element listed in section 577.041 and has been explicitly found to be inapplicable in drivers' license revocation proceedings. *Riche v. Dir. of Revenue,* 987 S.W.2d 331, 334 (Mo. banc 1999); *Coble v. Dir. of Revenue,* 323 S.W.3d 74, 77 (Mo. App. S.D.2010). In fact, in such proceedings, Director can even "use evidence … that would be viewed as illegally obtained and excluded if offered in a criminal case." *St. Pierre v. Dir. of Revenue,* 39 S.W.3d 576, 579 (Mo.App. S.D.2001). It appears from the hearing transcript and the Judgment that the trial court believed Ranger Gregory did not have authority to detain Brewer such that it ultimately suppressed that evidence in the criminal case and then wrongfully carried that evidentiary suppression over into the civil case. This determination essentially found that any

---

**5.** The exclusionary rule "requires that evidence obtained in violation of the fourth amendment cannot be used in a criminal proceeding against the victim of an illegal search and seizure." *Riche,* 987 S.W.2d at 331, 333 (Mo. banc 1999).

evidence of Brewer's intoxication could not be considered in the civil proceeding to demonstrate Trooper Wells had a reasonable basis to believe Brewer was driving while intoxicated under section 577.041. This is an erroneous application of the law. The trial court should not have excluded from its consideration all of the evidence presented by Director, which occurred after Ranger Gregory came into contact with Brewer. The trial court erred in excluding evidence relating to Brewer's intoxication by applying the exclusionary rule in this civil license revocation proceeding.[6] Director's point has merit.

Accordingly, Director should be given an opportunity to present the aforementioned evidence to the trial court for its proper consideration, consistent with this opinion, such that this case is remanded to the trial court for that purpose.

GARY W. LYNCH, P.J., and NANCY STEFFEN RAHMEYER, J., concur.

**6.** We note Brewer urges in his brief that the trial court did not rely on the exclusionary rule in making its determination. In support of this assertion, he points this Court to an "Order" entered by the trial court on June 30, 2011, which stated:

> This day the Court, having reviewed the record in the above-styled cause, notes that the Court failed to admit into evidence in the case at bar, the testimony and evidence adduced at the suppression hearing held on May 25, 2011, in the companion case of State v. [Brewer] (underscore omitted), Reynolds County case number 10RE–CR00389. The Court based its ruling in this case on evidence presented at the suppression hearing.
>
> Accordingly, it is hereby **ordered, adjudged, and decreed** that the testimony and evidence adduced at the suppression hearing held ... in the companion case of State

v. [Brewer] (underscore omitted) ... is admitted into evidence in this case.

(Emphasis in original). Brewer asserts this subsequent order clarifies the trial court's Judgment by specifically stating "that the [trial court] admitted into evidence the testimony and evidence adduced at the suppression hearing" such that it is "plain" that "the decision was not based on the exclusionary rule or any suppression issues. Rather it was based on the evidence presented at the hearing." The problem with Brewer's argument is that the Order at issue was filed on June 30, 2011, which was more than thirty days after the filing of the Judgment in this matter on May 25, 2011, such that the trial court had already been divested of its jurisdiction. Rule 75.01, Missouri Court Rules (2011). We do not, and cannot, consider this Order in our evaluation of this matter.