

# Missouri Court of Appeals
## Southern District

### In Division

CHRIS WOOD, )
)
    Petitioner-Respondent, )
)
    v. ) No. SD37261
)
DIRECTOR OF REVENUE, ) **Filed: May 19, 2023**
)
    Respondent-Appellant. )

### APPEAL FROM THE CIRCUIT COURT OF SHANNON COUNTY

The Honorable John H. Bloodworth, Senior Judge

## VACATED AND REMANDED WITH INSTRUCTIONS

The Director for the Missouri Department of Revenue ("Director") appeals from a judgment reinstating Chris Wood's ("Wood") driver's license following his refusal to submit to a chemical test. The Director raises one point on appeal:

> The trial court erred in finding that a federal park ranger lacks authority to act under Missouri's Implied Consent law, because such finding erroneously declares the law, in that an "arresting officer" specified in section 577.020 RSMO, includes federal officers authorized to carry firearms and to make arrests for violations of the laws of the United States.

We agree. Therefore, the judgment is vacated. We remand with instructions that the trial court make the following factual findings, based on the existing record: (1) whether Wood was arrested or stopped; (2) whether the arresting officer had reasonable grounds

to believe Wood was driving a motor vehicle while in an intoxicated or drugged condition; and (3) whether Wood refused to submit to the chemical test. *See* section 302.574.4.[1] Based upon those findings, the trial court is instructed to enter a new judgment. *See* section 302.574.5.

## Factual and Procedural Background

In the late afternoon of November 4, 2020, Officer Charles Lochart ("Officer Lochart"), a federal park ranger authorized under Missouri law to make arrests and to carry a firearm and employed by the United States Department of Interior, National Park Service, was pulling out onto Highway 106 from the Alley Spring area within the boundaries of the Ozark National Scenic Riverways ("ONSR") to which he was assigned. Officer Lochart observed a grey or silver Chevy Silverado pass him at a high rate of speed, which he estimated was in excess of 60 miles per hour in a 45 mile per hour zone. His radar indicated a "steady target speed of 65 miles per hour." Officer Lochart pulled out behind the Chevy and eventually stopped the vehicle off the side of Highway 106. When Officer Lochart approached the vehicle, he observed a cooler in the bed of the truck and an empty bottle of whisky. Officer Lochart then made contact with the driver of the vehicle, Wood.

When Officer Lochart first spoke to Wood, he noticed signs of possible alcohol intoxication or indications that Wood had consumed alcohol. Wood slurred his words in response to Officer Lochart's questions, had an odor of alcohol and bloodshot eyes, was not oriented to the time, and he admitted to consuming "about six drinks" throughout the day and that his last drink had been about an hour prior to the stop. Officer Lochart had

---

[1] All references to statutes are to RSMo Cum. Supp. 2022, unless otherwise indicated.

2

Wood perform several field sobriety tests, which he agreed to take and had persistent difficulty completing. After Wood completed the standardized field sobriety tests, Officer Lochart asked him to submit to a portable breath test. Wood declined to take the test. Wood told Officer Lochart he was "just going to go to jail anyway" and he thought he would be over the legal limit to drive.

Officer Lochart placed Wood under arrest for suspicion of driving under the influence. Officer Lochart allowed Wood to make a phone call to have his vehicle picked up and then took him to the National Park Service's field office in Winona, Missouri, for an evidentiary breath test. They met with a Missouri State Highway Patrol officer to administer the breath test at the field office, but Wood still refused to take the test. Officer Lochart read Wood the notice of Implied Consent from the Missouri Alcohol Influence Report ("AIR"). Wood again declined to take the test. Wood was transported to the Texas County Jail and was remanded to custody for a safekeeping hold. Officer Lochart issued Wood four federal citations: (1) speeding 65 miles per hour in a 45 miles per hour zone; (2) driving under the influence – 2nd offense; (3) having an open container of alcohol; and (4) refusal of a chemical test. The Director suspended Wood's driver's license for one year because of his refusal.

Wood filed his Petition challenging his license suspension on November 15, 2020, asking the court to set aside the suspension of his driver's license. The court held a bench trial on August 31, 2021.

At trial, Wood did not challenge the basis for his arrest or argue that Officer Lochart lacked probable cause to arrest him.[2]  Instead, he argued that Missouri's Implied Consent law does not apply in this case because Officer Lochart is a federal law enforcement officer.  Wood further argued that even within the ONSR, Officer Lochart does not have authority to enforce Missouri law.  Wood maintained that, because Officer Lochart is not specifically authorized as an agent or a "delegate" of the Director, the Director could not revoke a driver's license following an arrest by Officer Lochart.

The trial court found in Wood's favor.  It determined:  (1) Officer Lochart was not a "State, County, or Municipal law enforcement officer" and was not certified as a peace officer ("P.O.S.T. certified") by the State of Missouri, but rather has limited powers as a National Park Ranger under 54 U.S.C.A. 102701, which limits his authority to arrest for violations of federal law on federal property; (2) the language of sections 577.021 through 577.041 as well as the language in the AIR stating, "I arrested the above named person for a violation of a county or city ordinance prohibiting driving while intoxicated or an alcohol-related traffic offense or Section 577.010 or 577.012, RSMo[,]" precludes federal law enforcement officers arresting individuals for violations of federal law; (3) Officer Lochart was not a delegate of the Director or empowered to act pursuant to sections 577.041 and 577.020; and (4) the misdemeanor charge filed against Wood for refusing a chemical test was not valid because it was not issued under state law but was issued under federal rules and regulations.  The trial court entered its judgment setting

---

[2] In closing argument, Wood conceded Officer Lochart had probable cause stating, "The issue here isn't whether or not [Officer Lochart] had probable cause.  Obviously, he had probable cause to place [Wood] under arrest."

4

aside the suspension of Wood's driver's license and directed the Director to "remove any reference to said suspension and or revocation from [Wood's] driving record, to expunge and erase from his record the alleged refusal and to return [Wood's] license to him."

The Director filed a timely notice of appeal, and this appeal follows.

**The Law at Issue**

<u>Standard of Review</u>

A trial court's determination in a driver's license suspension or revocation case is governed by the appellate principles applicable to the findings of fact and conclusions of law from a trial judge's order. ***Brewer v. Dir. of Revenue***, 386 S.W.3d 831, 834-35 (Mo. App. S.D. 2012). Accordingly, this Court will affirm the judgment of the trial court unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. ***White v. Dir. of Revenue***, 321 S.W.3d 298, 307-08 (Mo. banc 2010). In reviewing a court-tried civil case, our standard of review depends on the type of question the case presents. ***Id.*** at 308. Here, the relevant facts are uncontested. The issues before this Court involve the trial court's declarations of law. This Court's review of questions of law is *de novo*. ***Id.***

In addition, when drivers contest the revocation or suspension of their driver's licenses, we review the trial court's decision to confirm it considered the requisite elements of Missouri's refusal statute. In proceedings under section 302.574.4,[3] the trial court is only to determine whether: (1) the person was arrested or stopped; (2) the

---

[3] ***Brewer*** and several other cases cited refer to subsection 4 of section 577.041 when detailing the three elements of a court's analysis following a license revocation. 386 S.W.3d at 836. The Missouri General Assembly removed subsection 4 of section 577.041 and used it, with modifications, to enact section 302.574 in 2014.

5

arresting officer had reasonable grounds to believe that the person was driving a motor vehicle while in an intoxicated or drugged condition; and (3) the person refused to submit to the test. *Brewer*, 386 S.W.3d at 836. "Reasonable grounds" are virtually the same as "probable cause." *Hinnah v. Dir. of Revenue*, 77 S.W.3d 616, 620 (Mo. banc 2002). The validity of the initial stop that precipitated the revoked or suspended license is not an element of the offense, and the Director is also free to present evidence that would otherwise be excluded if offered in a criminal prosecution proceeding. *Id.* at 618-21; *Brewer*, 386 S.W.3d at 836.

Missouri Implied Consent Law

Missouri's Implied Consent statutes provide that all persons operating motor vehicles on Missouri's public highways, in addition to other means of transportation not at issue in this case, "shall be deemed to have given consent, subject to the provisions of sections 577.019 to 577.041, to a chemical test or tests of the person's breath, blood, saliva, or urine for the purpose of determining the alcohol or drug content of the person's blood" in certain enumerated circumstances. Section 577.020.1. One such circumstance applies to the facts of this case: "If the person is arrested for any offense arising out of acts which the *arresting officer* had reasonable grounds to believe were committed while the person was operating a vehicle or a vessel while in an intoxicated condition[.]" Section 577.020.1(1) (emphasis added). Upon such an arrest the "law enforcement officer" shall administer the chemical sobriety test after stopping, detaining or arresting the person "for any reason." Section 577.020.1. If a person under arrest "refuses upon the request of the *officer* to submit to any test allowed pursuant to section 577.020, then evidence of the refusal shall be admissible in any proceeding related to the acts resulting

6

in such detention, stop, or arrest." Section 577.041.1 (emphasis added). The officer "shall inform the person that evidence of refusal to take the test may be used against such person" and "he or she shall further be informed that his or her license shall be immediately revoked upon refusal to take the test." Section 577.041.2.

The terms "law enforcement officer," "arresting officer," and "officer" are used interchangeably under Chapter 577 provisions. Section 577.001 contains definitions for terms used in the chapter. "Law enforcement officer" or "arresting officer" "includes the definition of law enforcement officer in section 556.061 and military policemen conducting traffic enforcement operations on a federal military installation under military jurisdiction in the state of Missouri[.]" Section 577.001(16). A "law enforcement officer" as defined in section 556.061, includes:

> [A]ny public servant having both the power and duty to make arrests for violations of the laws of this state, ***and federal law enforcement officers authorized to carry firearms and to make arrests for violations of the laws of the United States***[.]

Section 556.061(32) (emphasis added).

Whereas the Implied Consent statutes and the rest of Chapter 577 statutes are concerned with criminal prosecutions, Chapter 302 addresses the civil laws that control the privilege of driver's licensure. The Chapter 302 statutes apply to drunk driving arrests because of internal statutory citations and legislative history.

Section 302.574 refers back to section 577.041 and provides that:

> If a person who was operating a vehicle refuses upon the request of the officer to submit to any chemical test under ***section 577.041***, the officer shall, on behalf of the director of revenue, serve the notice of license revocation personally upon the person and shall take possession of any license to operate a vehicle issued by this state which is held by that person. The officer shall issue a temporary permit, on behalf of the director of revenue, which is valid for fifteen days and shall also give the person notice

7

of his or her right to file a petition for review to contest the license revocation.

Section 302.574.1 (emphasis added).  This statute applies after refusal of a chemical test pursuant to section 577.041.  An arrest and refusal to submit to sobriety testing under sections 577.020 and 577.041 will precipitate a license revocation under section 302.574.

**Analysis**

<u>A federal law enforcement officer is a "law enforcement officer" and "arresting officer" for purposes of Missouri's Implied Consent and license revocation laws.</u>

The Director argues that Officer Lochart, a federal park ranger, qualifies as an "arresting officer" and "law enforcement officer" as contemplated by Missouri's Implied Consent and license revocation laws, and the trial court "erroneously declare[d] the law" in determining he had limited enforcement authority as a National Park Ranger.  We agree.  The trial court also reasoned that Officer Lochart citing Wood for federal offenses, and not for a violation of state or local law, somehow distinguished the arrest from others under the Implied Consent law.  The trial court is mistaken.

"Any person who operates a vehicle upon the public highways of this state" is deemed to have given implied consent to submit to chemical testing.  Section 577.020.1.  Implied consent has been interpreted broadly to apply to any person operating a motor vehicle in Missouri, regardless of where they operate the vehicle.  *Bertram v. Dir. of Revenue*, 930 S.W.2d 7, 9 (Mo. App. W.D. 1996).  "A driver is entitled, however, to withdraw that consent, though the consequence of such withdrawal is revocation of the driver's operating privilege."  *Brown v. Dir. of Revenue*, 34 S.W.3d 166, 171 (Mo. App. W.D. 2000).  There is no dispute that Wood was arrested by Officer Lochart, a federal park ranger, while driving his truck on a public highway within the boundaries of the

8

ONSR, where the State retains concurrent jurisdiction with the United States. Section 12.025.

Missouri's Implied Consent law applies where a "person is arrested for any offense arising out of acts which the ***arresting officer*** had reasonable grounds to believe were committed while the person was operating a vehicle or a vessel while in an intoxicated condition[.]" Section 577.020.1(1) (emphasis added). The trial court did not find that Officer Lochart lacked reasonable grounds to believe Wood was driving under the influence of alcohol, and Wood's brief does not raise any such argument on appeal. The only legal dispute is whether Officer Lochart qualified as an "arresting officer" under section 577.020.

To understand the scope of "arresting officer," we turn to Missouri's principles of statutory interpretation. This Court will first turn to statutory definitions to discern the General Assembly's intent. ***Union Elec. Co. v. Mo. Pub. Serv. Comm'n***, 591 S.W.3d 478, 485 (Mo. App. W.D. 2019). Where statutory definitions are not available, and to the extent possible, legislative intent is effectuated by using the plain and ordinary meaning of statutory text. ***Butler v. Mitchell-Hugeback, Inc.***, 895 S.W.2d 15, 19 (Mo. banc 1995). Every word in the text must be presumed to have meaning, and it should be understood that there is no superfluous language. ***Verified Application and Petition of Liberty Energy (Midstates) Corp. v. Office of Pub. Counsel***, 464 S.W.3d 520, 524-25 (Mo. banc 2015).

"Arresting officer" is defined in section 577.001, the definition section for the criminal code, and "includes the definition of law enforcement officer in section 556.061…[.]" Section 577.001(16). "[F]ederal law enforcement officers authorized to

9

carry firearms and to make arrests for violations of the laws of the United States" are "law enforcement officer[s]." Section 556.061(32). National Park Rangers are authorized by statute to carry firearms and make arrests for violations of federal law. 54 U.S.C. § 102701(a)(2)(A)-(B). Officer Lochart similarly testified that the National Park Service authorizes him to make arrests and carry firearms. A plain and ordinary reading of the statutory definition leads us to conclude that Officer Lochart is an "arresting officer" under Missouri's Implied Consent law and the Missouri General Assembly intended National Park Rangers to act thereunder.

<u>The suspension or revocation of a driver's license is valid after an arrest and citation for violating federal law.</u>

Now that we have determined that Officer Lochart and other National Park Rangers are "arresting officers" under Missouri's Implied Consent law, we must determine whether Officer Lochart was authorized to revoke Wood's driver's license under section 302.574.1 for refusing to submit to the chemical test and for violation of federal law instead of state law.

The trial court reasoned that a person had to have been arrested for a state, county, or municipal ordinance in order for the Implied Consent statutes to apply and for Wood's refusal to qualify for license revocation under section 302.574.1. The Director does not dispute that Officer Lochart issued Wood citations for violations of federal law but argues no such limitation exists in the refusal statutes. We agree with the Director and hold that Missouri's Implied Consent law and refusal statutes do not require that a person be cited with a violation of Missouri state law or a municipal or county ordinance for the Director to revoke a license under section 302.574.1.

Section 302.574.1 provides:

10

> If a person who was operating a vehicle refuses upon the request of the *officer* to submit to any chemical test under [the Implied Consent law], the *officer* shall, on behalf of the director of revenue, serve the notice of license revocation personally upon the person and shall take possession of any license to operate a vehicle issued by this state which is held by that person.

Section 302.574.1 (emphasis added). The Director shall thereafter revoke the driver's license for one year. Section 302.574.3. Although Chapter 302 does not define the word "officer," it is "'appropriate to take into consideration statutes involving similar or related subject matter when such statutes shed light upon the meaning of the statute being construed[.]'" *Ivie v. Smith*, 439 S.W.3d 189, 204 n.16 (Mo. banc 2014) (quoting *Cook Tractor Co. v. Dir. of Revenue*, 187 S.W.3d 870, 873 (Mo. banc 2006)). Subsection 1 of section 302.574 refers back to a driver refusing a chemical test under section 577.041, and the phrasing of the license revocation statute clearly contemplates a law enforcement officer with police powers. *See generally* Section 302.574.

We find that "officer" under section 302.574 should be read *in pari materia* with the Implied Consent statutes under Chapter 577 because the former's use of "officer" relates back to an "arresting officer" and "law enforcement officer" under section 577.020. These statutory provisions are meant to be read in concert, and the criminal provisions of section 577.020 implicate the civil consequences of section 302.574. This reading comports with the legislative history and plain reading of section 302.574.

While certain license suspension and revocation provisions require violations of state law or county or municipal ordinances and require officers to take certain actions upon an arrest for such violations, *see*, *e.g.*, Sections 302.505-510 (creating a duty for any law enforcement officer who arrests a person for violating a state, county, or municipal law related to driving while intoxicated to submit a report to the Director if the person's

11

blood alcohol content is over 0.08%), the Implied Consent statutes, refusal statute, and license revocation statute contain no such limitation. *See* Sections 577.020, 577.041, and 302.574.1. The Director may suspend or revoke a driver's license after a driver refuses an officer's request to undertake a chemical test, period. Sections 302.574.1 and 577.041.1.

After a driver contests his or her license revocation, a reviewing court may consider only three factors: (1) whether the person was arrested; (2) whether the arresting officer had reasonable grounds to believe that the person was driving while intoxicated;[4] and (3) whether the person refused to submit to the chemical test. Section 302.574.4. This legal framework is not predicated on a violation of state or local law or a certain level of blood alcohol content.

The Implied Consent law also specifies that it applies when a "person is arrested for ***any offense*** arising out of acts which the arresting officer had reasonable grounds to believe were committed while the person was operating a vehicle or a vessel while in an intoxicated condition[.]" Section 577.020.1(1) (emphasis added). We will give "any offense" its plain and ordinary meaning and conclude that the Missouri General Assembly did not intend to exclude citations for violations of federal law from the Implied Consent law, refusal statute, and related license revocation statute. To hold otherwise would be illogical since "arresting officer" under the Implied Consent statutes includes "***federal law enforcement officers authorized to carry firearms and to make arrests for violations of the laws of the United States***[.]" Section 556.061(32) (emphasis

---

[4] Section 302.574.4(2) includes three subsections, (a) – (c); however, we use the language of subsection (a) above as it is the only one applicable to the facts of this case.

12

added).  By so holding, we follow the example of at least one other state which also held its Implied Consent and driver's license revocation provisions are implicated by federal officer arrests.  *E.g.*, ***State, Dep't of Motor Vehicles and Pub. Safety v. Kuemmerlin***, 985 P.2d 750, 751 (Nev. 1999); ***State, Dep't of Motor Vehicles and Pub. Safety v. Lovett***, 874 P.2d 1247, 1250 (Nev. 1994).

<u>The Missouri AIR does not restrict Missouri's Implied Consent law or license revocation statute.</u>

The trial court also relied on the language in the Director's AIR to support its ruling in Wood's favor and to reason the Director's AIR intended to exclude federal officers issuing citations for violations of federal law.  The trial court's judgment provides:

> Section 577.021 through 577.041 as well as the language contained in Respondent Exhibit A, specifically page 4 of the Alcohol Influence Report, states "I arrested the above named person for a violation of a county or city ordinance prohibiting driving while intoxicated or an alcohol-related traffic offense or Section 577.010 or 577.012, RSMo.

The "I arrested" language precedes the signature block that an arresting officer signs on the AIR.  Sections 577.021 through 577.041 make no such reference to the AIR or the purported "I arrested" statement.  Contrary to the trial court's reading, these statutes are not restricted by the AIR.

The trial court's reliance on the AIR is mistaken for two more reasons.  First, the trial court failed to recite the complete quote.  The full language from the AIR before the signature block states:

> I arrested the above named person for a violation of a county or city ordinance prohibiting driving while intoxicated or an alcohol-related traffic offense or Section 577.010 or 577.012, RSMo, ***or conducted a .020% or more blood alcohol content-related stop***.

13

(Emphasis added).  Officer Lochart wrote Wood a citation for driving under the influence – 2nd offense and refusal of a chemical test, both being "alcohol-related traffic offense[s]."  Wood's arrest and federal citations thereby comport with the AIR.

Second, and most glaring, the passage of the AIR that the trial court focused on states that an arrest for "an alcohol-related traffic offense" is sufficient foundation for the AIR.  The AIR does not modify "alcohol-related traffic offense" by a "state," "federal," or another descriptor.  An officer may then complete the AIR after arresting someone for any alcohol-related traffic offense.  The trial record shows that Wood was arrested for multiple alcohol-related traffic offenses, including driving with an open alcoholic beverage, driving while under the influence, and refusing a chemical sobriety test.  The fact that these offenses were governed by federal law is inconsequential.

<u>Arresting officers are not required to be agents or delegates of the Director under the Implied Consent law.</u>

We find additional fault in the trial court's focus on Officer Lochart not being a supposed delegate of the Director.  The court's judgment, in finding for Wood, stated, "In addition, the arresting officer was not a delegate of the Department of Revenue and was not empowered to act on the Department of Revenue's behalf."  It further determined that Officer Lochart "was not P.O.S.T. [peace officer standards and training] certified by the State of Missouri."  These points are irrelevant.

Missouri's Implied Consent law directs the "arresting officer" to administer a chemical sobriety test after stopping, detaining or arresting someone under suspicion of driving under the influence.  Section 577.020.1.  For the reasons previously stated, "arresting officers" includes federal law enforcement officials.  If someone refuses an officer's request to submit to a chemical test, then the Director shall revoke his or her

14

license. Section 302.574.3. Nothing in the statutes at issue hinges on the officer's peace officer certification or status as a delegate of the Director. Indeed, "police do not generally act as the Director's agents" under the Implied Consent law. *Zahner v. Dir. of Revenue*, 348 S.W.3d 97, 101 (Mo. App. W.D. 2011). The trial court's attention on Officer Lochart not being P.O.S.T. certified or a delegate of the Director was simply misplaced.

Further, to interpret Missouri's Implied Consent law, refusal statute, and license revocation statute as the trial court does in its judgment produces an absurd result. Statutes must be read to avoid absurd or illogical results that defeat the purpose of the legislation. *Roesing v. Dir. of Revenue*, 573 S.W.3d 634, 639 (Mo. banc 2019). The Supreme Court of Missouri has explained that the purpose of the Implied Consent law "is to rid the highways of drunk drivers." *Hinnah*, 77 S.W.3d at 619 (internal quotations omitted). The trial court held that federal officers making arrests for violations of federal law cannot serve as the basis for a driver's license revocation. If the trial court's judgment is correct, this would exempt an entire class of drunk drivers from the consequences of the Implied Consent law without reason or express direction from the General Assembly. This exemption would extend beyond the ONSR's watershed and apply to drivers on other federal lands such as the Mark Twain National Forest, which covers a significant portion of the State. *See, e.g.,* Proclamation No. 4415, 41 Fed. Reg. 7481 (Feb. 17, 1976) (designating the Clark National Forest and Mark Twain National Forest as one unified national forest); *see also* 16 U.S.C. § 539h (1991) (establishing the Greer Spring Special Management Area within the Mark Twain National Forest).

15

We will not read an absurd result into the Implied Consent law where it is not explicitly provided. Inferring that the Missouri General Assembly intended inebriated drivers on federal land to remain on public roads is absurd and illogical given the text and intent of the Implied Consent law.

Point I is granted.

## Conclusion

The judgment is vacated. We remand with instructions that the trial court make the following factual findings, based on the existing record: (1) whether Wood was arrested or stopped; (2) whether the arresting officer had reasonable grounds to believe Wood was driving a motor vehicle while in an intoxicated or drugged condition; and (3) whether Wood refused to submit to the chemical test. *See* section 302.574.4. Based upon those findings, the trial court is instructed to enter a new judgment. *See* section 302.574.5.

JENNIFER R. GROWCOCK, J. – OPINION AUTHOR

JEFFREY W. BATES, J. – CONCURS

MARY W. SHEFFIELD, J. – CONCURS