

# Missouri Court of Appeals

## Southern District

## Division One

KAREN MARIE BROWN, )
)
    Petitioner-Respondent, )
)
v. ) No. SD35304
)
ANTHONY THOMAS BROWN, ) **Filed: Feb. 5, 2019**
)
    Respondent-Appellant. )

APPEAL FROM THE CIRCUIT COURT OF BARRY COUNTY

Honorable Robert Foulke

**<u>AFFIRMED</u>**

(*Before Burrell, P.J., Rahmeyer, J., and Lynch, J.*)

PER CURIAM. In four points on appeal, Anthony Thomas Brown ("Father") challenges the transfer of venue of this case from the St. Charles County Circuit Court ("the St. Charles Court") to the Barry County Circuit Court ("the trial court"), along with the resulting judgment ("the judgment") that allowed Karen Marie Brown ("Mother") to relocate with the parties' minor children and retain custody of them. Because Father has failed to demonstrate any reason why the presumed-correct judgment of the trial court must be reversed, we affirm.

1

## Governing Principles of Review

We "must affirm the trial court's judgment 'unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law.'" *Brown v. Brown*, 423 S.W.3d 784, 787 (Mo. banc 2014) (hereinafter "*Brown I*") (quoting *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976)). "We defer to the trial court's superior ability to assess the credibility of witnesses and view all facts and reasonable inferences in [the] light most favorable to its decision." *Dunkle v. Dunkle*, 158 S.W.3d 823, 832-33 (Mo. App. E.D. 2005).

## Background

The marriage between Mother and Father was dissolved in Texas in 2006. Six children were born of the marriage.[1] The Texas dissolution decree effectively granted Mother and Father joint legal and physical custody of the children, and Mother's home was designated as the children's primary residence. In 2005, Mother moved to St. Charles County, Missouri with the six children, and they were living there at the time the parties' divorce decree was entered by the Texas court. Father was living in Texas at the time and was a Captain in the United States Air Force.

Shortly after the divorce, Father was reassigned to a base in Omaha, Nebraska, and Father has been a Nebraska resident since 2006. In 2007, the Texas decree was registered as a foreign judgment in the St. Charles Court. Mother and Father have engaged in extensive litigation over the minor children since the Texas dissolution decree was entered. The most notable change came in 2011, when the St. Charles Court amended the Texas decree and

---

[1] Four of the six children were emancipated at the time of trial.

2

awarded Mother sole legal custody of the children due to the parties' demonstrated inability to co-parent.[2]

As relevant to this appeal, Mother notified Father in May 2012 that she intended to relocate with the children from St. Charles County to Washburn, Barry County, Missouri. One month later, Father filed in the St. Charles Court a "**MOTION SEEKING AN ORDER TO PREVENT RELOCATION**[.]"  Despite Father's pending objection to the relocation, Mother moved with the children to Washburn.  Soon thereafter, in August 2012, Father filed in the St. Charles Court "[Father]**'S MOTION TO MODIFY**" the judgment of dissolution, alleging 21 continuing and substantial changes of circumstance that warranted awarding Father sole legal and physical custody of the children.[3]

In January 2013, Mother filed a "**MOTION TO DECLINE JURISDICTION AND FOR CHANGE OF VENUE**" pursuant to section 452.371[4] that asked the St. Charles Court to transfer the case to Barry County.  In support of that motion, Mother alleged the following:

- Mother and the children were currently residing in Barry County and had resided there for the past six months;

- Father was currently residing in Nebraska and had been living there for the past seven years;

- St. Charles County was not a forum convenient to either party;

---

[2] In 2009, Father filed in St. Charles County a Family Access Motion, Motion for Contempt, and a Motion to Modify where he asked for sole legal and physical custody of the minor children.  Based on trial testimony from the court-appointed psychologist, the children, Mother, Father, and the guardian *ad litem* ("GAL"), the court found that there had been a substantial and continuing change of circumstances which justified a change in custody.  Specifically, the St. Charles Court found that Mother and Father had displayed an "inability . . . to exercise joint legal custody[,]" and that "any further attempt at co-parenting would be futile."  The St. Charles Court maintained joint physical custody with Mother and Father, and reluctantly gave sole legal custody to Mother in an attempt to minimize any further damage from being inflicted on the children as a result of the parties "efforts" at co-parenting.

[3] Mother filed a counter-motion pertaining to child support, but it is not at issue in this appeal.

[4] Unless otherwise indicated, all statutory references are to RSMo 2000, and all rule references are to Missouri Court Rules (2018).

- Father would not be inconvenienced by moving the litigation to Barry County because he did not reside in St. Charles County or anywhere else in Missouri;

- Mother, Father, and the children did not have any significant contacts to St. Charles County; and

- The best interests of the children would be served by moving the litigation to Barry County because the children were in Mother's care in Barry County, attended school in Barry County, and witnesses and evidence concerning the children were located in Barry County.

The St. Charles Court entered an order on March 14, 2013 that granted Mother's "**MOTION TO DECLINE JURISDICTION AND FOR CHANGE OF VENUE**" and transferred the case to Barry County because no party to the case resided in St. Charles County, Mother and a majority of the parties' children resided in Barry County, Father resided in Nebraska, the witnesses necessary to the pending motion to modify lived in Barry County, and the inconvenience to Father of litigating in Barry County was negligible as compared to the inconvenience to Mother to litigate in St. Charles County.[5]

In July 2013, Father filed a motion in the trial court "**TO DECLINE JURISDICTION AND FOR CHANGE OF VENUE TO ST. CHARLES COUNTY**[.]" The trial court denied the motion, and for the next four years, the case proceeded toward trial. In May 2017, Mother again relocated with the children, this time from Barry County,

---

[5] Seven days after the St. Charles Court transferred the case to Barry County, Father filed "[Father]**'S MOTION TO RECONSIDER VACATE AND OR AMEND ORDER ENTERED MARCH 14, 2013**[,]" which was heard by a different St. Charles County judge. That judge stated that she was "not persuaded that Barry County is a more appropriate forum" and entered an order on April 8, 2013 that purported to set aside the transfer and keep the case in St. Charles County. The day after that order was entered, Mother filed a "**MOTION TO SET ASIDE**" the order on the basis that, once the St. Charles Court transferred venue to Barry County, St. Charles County lost jurisdiction to vacate its prior order of March 14, 2013 that transferred venue to Barry County. The St. Charles Court agreed with Mother's argument and set aside the April 8, 2013 order, stated that the March 14, 2013 order was in full force and effect, and thereby returned, or kept, venue in Barry County.

4

Missouri to Pulaski County, Arkansas, and Mother and the children were living there at the time of trial.

The trial took place in Barry County on August 28 and 29, 2017. The judgment found that no change of circumstances so substantial and continuing had occurred so as to warrant a change in custody. It therefore continued joint physical custody of the minor children with Father and Mother, with Mother's address as the children's primary residence, and it maintained sole legal custody of the minor children with Mother. It also determined that Mother's relocation from St. Charles County to Barry County was made in good faith and was in the children's best interests, and it approved Mother's latest relocation with the children to Pulaski County, Arkansas. Additional background information will be recited as necessary to address Father's points on appeal.

**Analysis**

*Points 1 and 2*

We address together Father's points challenging venue in Barry County. Point 1 claims the St. Charles Court erred in transferring venue to the trial court under section 452.371 because its findings were not supported by substantial evidence and the "factual predicate" for granting relief was not met.[6] Point 2 claims similar error with respect to the trial court's denial of his "**MOTION TO DECLINE JURISDICTION AND FOR CHANGE OF VENUE TO ST. CHARLES COUNTY**[.]" We need not address Father's first point directed at the St. Charles Court because it became moot once the transfer to Barry County was complete. At that point, the act could only be undone by the receiving

---

[6] While Father claims the St. Charles Court erred in transferring venue, his point merely recites black-letter law and fails to "[e]xplain in summary fashion why, in the context of the case, those legal reasons support [his] claim of reversible error" – a substantial violation of Rule 84.04(d)(1)(C).

court, *i.e.* the trial court. ***State ex rel. Missouri Pub. Serv. Comm'n v. Joyce***, 258 S.W.3d 58, 61 (Mo. banc 2008). Therefore, any allegations of error regarding the transfer of venue are properly attributed to the trial court, as Father does in his second point.[7] Father argues that the trial court erred in denying his "**MOTION TO DECLINE JURISDICTION AND FOR CHANGE OF VENUE TO ST. CHARLES COUNTY**" because that ruling misapplied sections 452.371 (regarding declining jurisdiction in a modification proceeding) and 452.377 (the relocation statute) in that the trial court enabled Mother "to manipulate venue, delay proceedings and thereby further establish and regularize the new residence she had chosen, and make the litigation more difficult and expensive" for Father.

Section 452.371 applies when a party in a "modification proceeding" claims that a particular forum is inconvenient. ***Garner v. Garner***, 27 S.W.3d 878, 879 (Mo. App. S.D. 2000). Section 452.371 constitutes a specific exception to the general rule that "the intrastate transfer of venue on the basis that one forum is more convenient than another has no application in this state." ***State ex rel. Neville v. Grate***, 443 S.W.3d 688, 692 (Mo. App. W.D. 2014). *See also* ***State ex rel. Missouri Pub. Serv. Comm'n v. Joyce***, 258 S.W.3d 58, 61 (Mo. banc 2008) (stating that specific venue provisions supersede general venue provisions).

Specifically, section 452.371 allows a court to decline to exercise jurisdiction in a modification proceeding if it "finds that exercise of its jurisdiction would be clearly inconvenient to either party to the proceeding." In making that determination, the court is

---

[7] In support of his first point, Father argues that the transfer was erroneous because no evidence was presented to the St. Charles Court in support of Mother's motion for transfer, which was not self-proving. Before making its ruling, the St. Charles Court heard argument from the attorneys in support of and in opposition to Mother's motion, and the court made reference to the parties' pleadings as being relevant to its ruling. At no time during that process did Father allege that evidence would need to be presented before the court could make its ruling. Complaints of error not presented to the trial court cannot be raised for the first time on appeal. ***Brown I***, 423 S.W.3d at 787.

required to consider the parties' residence, the location of witnesses, and the "availability to either party of another more convenient court with jurisdiction." Section 452.371.1(1)-(3).

> If the court finds that it is an inconvenient forum and a court of another county is a more appropriate forum, and such court will accept jurisdiction of the case, the original court shall order a change of venue to the more appropriate forum and state the reasons for such change.

Section 452.371.3. We review these types of discretionary rulings for an abuse of discretion. ***Chandler v. Multidata Sys. Int'l Corp., Inc.***, 163 S.W.3d 537, 546 (Mo. App. E.D. 2005).

> Father concedes that Mother

> alleged facts that if proven would establish that she had taken up residence in Barry County, Missouri, that [Father] resided in Nebraska, that prospective witnesses lived "in and around Barry County," and that litigation in the Barry County Circuit Court would be more convenient for her than litigation in the St. Charles County Circuit Court.

While he concedes that "[s]ection 452.371 standing alone would appear to authorize the Barry County Circuit Court's decision to deny [Father]'s motion and exercise jurisdiction in the case[,]" Father argues -- without any supporting authority -- that the trial court was obligated to "harmonize" section 452.371 with section 452.377, the relocation statute. He claims that Mother improperly relocated with the minor children in violation of section 452.377 and should not be allowed to use that misconduct to her advantage in the venue decision under section 452.371.

The trial court denied Father's "**MOTION TO DECLINE JURISDICTION AND FOR CHANGE OF VENUE TO ST. CHARLES COUNTY**" after considering the arguments of the parties, the statutory authority cited by the GAL, and the best interests of the children. Considering Father's concessions regarding the sufficiency of Mother's allegations, and the absence of any authority requiring the trial court to consider the sincerity

7

of a party's actions under the relocation statute[8] when making a section 452.371 determination, we cannot say that the trial court abused its discretion in retaining jurisdiction over the case. Point 2 is denied.

*Point 4*

For ease of analysis, we address Father's final points out of order. Point 4 claims the trial court abused its discretion in "disregarding" evidence presented on behalf of Father by Dr. Ann Duncan ("Dr. Duncan"), a clinical psychologist who had conducted a psychological evaluation of Mother, because the trial court made that "ruling" without "setting forth a tenable and reviewable basis" which was "arbitrary and precluded the [trial c]ourt from making a reasonable and balanced determination of the children's best interests."

Dr. Duncan was Father's paid expert, and she allowed Father to be physically present during her evaluation of Mother. While Dr. Duncan's original February 2017 report did not diagnose Mother with any personality disorder, Dr. Duncan later received additional materials from Father that caused her to update her report and diagnose Mother -- four days before trial -- with borderline personality disorder.

Father argues that the trial court's "decision to disregard Dr. Duncan's testimony and report cannot be reconciled with" its obligation "to fashion a custody order that served the children's best interests above any other value." Father's argument ignores the fact that the trial court explicitly found Dr. Duncan not credible. With respect to her testimony, it stated:

> The Court has a very difficult time understanding how Dr. Duncan felt that having Father physically present in the room during the tests and to be the only information provider for her report proper. The Court finds this to be one-sided and inappropriate. The [Court] questions the methods that Dr. Duncan used to obtain her alleged objective results. The Court finds Dr. Duncan not credible.

---

[8] We also note that in its judgment the trial court found that Mother's relocations were made in good faith and that her relocation notice complied with the requirements of the statute.

We are required to defer to the trial court's determinations regarding credibility. ***White v. Director of Revenue***, 321 S.W.3d 298, 308 (Mo. banc 2010). What Father characterizes as a "ruling" was actually a credibility determination made by the trial court, which we will not reverse on appeal. "When evidence is contested by disputing a fact in any manner, this Court defers to the trial court's determination of credibility." ***Id.***

Point 4 is denied.

*Point 3*

Father's third point claims the trial court erred in failing to discharge the GAL and appoint a replacement after receiving the GAL's post-trial, written report because the GAL "failed to discharge her duties under [section] 452.423 and other legal authority and the Court thus was precluded from rendering the judgment best serving the interests of the children[.]"

This is not the first time that Father has challenged a GAL's authority to participate in the various proceedings involving the custody of the children. In a prior appeal, Father asserted that the GAL did not have authority to participate in that appeal. ***Brown I***, 423 S.W.3d at 787. In its opinion resolving the appeal, our high court refused to "delve into an analysis" of Father's arguments on appeal due to Father's "failure to pursue this issue and any potential remedies in the trial court[.]" ***Id.*** (citing Rule 78.09). The same circumstance exists here -- Father did not argue to the trial court that the GAL should be removed from the case and a new GAL appointed. ***Id.***

Father's complaint in this appeal about the GAL is that she failed to include in her report evidence of Mother's "mental illness and damaging behavior" that Father asserts

required the trial court to "discharge the [GAL], appoint a replacement, and refrain from proceeding in the absence of competent investigation and report by the replacement [GAL]."

The GAL filed her recommendations on September 18, 2017, approximately one month after the trial. In response, Father filed a 27-page brief with the trial court titled "[Father]**'S RESPONSE TO REPORT OF [GAL]**." In the response, Father noted numerous alleged fallacies and oversights in the GAL's methodologies and recommendations, a result of which led Father to "suggest" to the trial court that "the GAL's recommendation that the primary residence of the minor children remain with Mother is an opinion formed without substantial basis or in accordance with the rules, statutes, and caselaw of this State." Absent from all of this, however, was any request that the trial court remove the GAL from the case and appoint a new one.

Father also filed a 24-page after-trial motion titled "[Father]**'S MOTION TO VACATE, SET ASIDE, AND TRANSER CAUSE FOR NEW TRIAL OR, IN THE ALTERNATIVE, TO AMEND ITS JUDGMENT IN CONFORMITY WITH THE LAWS AND EVIDENCE PRESENTED**[.]" Once again, this pleading failed to allege as error the trial court's failure to discharge the GAL and appoint a new one. As in **Brown I**, Father had the ability to challenge the GAL's authority to participate at the trial-court level and failed to do so, and we will not address that argument for the first time on appeal. 423 S.W.3d at 787-88; Rule 78.09. *See also **Rouse v. Cuvelier***, 363 S.W.3d 406, 421 (Mo. App. W.D. 2012) (internal citations omitted).

Point 3 is also denied, and the judgment of the trial court is affirmed.

10